## MILLINGAR *v.* HARTUPEE.

1. The twenty-fifth section of the Judiciary Act does not give jurisdiction to this court in cases of decisions by the courts of a State against mere *asser-*
*..tions* of an exercise of authority under the United States.

Hence, where a party claims authority under an order of a court of the United States, which, when rightly viewed, does not purport to confer any authority upon him, the writ will be dismissed.

---

* Rider *v.* Wright & Marshall, 10 Louisiana Annual, 127

2. And it will be dismissed on motion, and apart from a consideration of merits, when the single question is, not the validity of the authority, but its existence, and the court is fully satisfied that there was and could have been no decision by the State court against any authority under the United States existing in fact.

ERROR to the Supreme Court of the State of Pennsylvania. On motion to dismiss the writ for want of jurisdiction.

Hartupee brought an action against Millingar as garnishee of Gearing, in one of the courts of Alleghany County, Pennsylvania; the object of the suit having been to subject certain moneys of Gearing, alleged to be in the hands of Millingar, to the satisfaction of a judgment recovered by Hartupee against Gearing in that court.

The controversy related to the ownership of certain cotton, captured for breach of blockade, and libelled as prize in the District Court for the Northern District of New York. This cotton, before the hearing of the cause of prize, had been released to Millingar by an order of the court upon the consent and application of the district attorney, and with the consent, also, of the counsel for the captors.

In the suit in the State court it was alleged on the part of the plaintiff, Hartupee, that the cotton when captured was the property of Gearing, and remained such when relieved by the release from liability to condemnation for violation of the blockade. He demanded, therefore, that the cotton or its proceeds in the hands of Millingar—the cotton having been sold by Millingar, and the question being upon the liability of the proceeds for the debts of Gearing—should be subjected to the satisfaction of his judgment against Gearing.

On the other hand, it was asserted by the defendant, Millingar, that the cotton at the time of capture belonged to him and not to Gearing, and if this were otherwise that the order of release transferred the title to him.

The controversy resulted in a judgment against Millingar in favor of Hartupee for the amount of the judgment of the latter against Gearing.

From this judgment a writ of error was taken to the Su-

preme Court of Pennsylvania, by which court the judgment of the District Court was affirmed.

One of the questions requiring the judgment of the Supreme Court was, whether the order of the District Court releasing a portion of the captured cotton from the custody of the marshal, and ordering that it be delivered to Millingar, vested in him any title of ownership; and the decision of the court was that it did not.

Millingar then brought the case here on error, assuming it to be one within the twenty-fifth section of the Judiciary Act, which provides " that a final judgment or decree in any suit, in the highest court of law or equity of a State in which a decision in the suit could be had, *where is drawn in question the validity of a treaty or statute of, or an authority exercised under the United States,* and the decision is against their validity . . . may be re-examined and reversed or affirmed in this court upon a writ of error."

The correctness of this assumption was the point now raised, by the motion to dismiss.

*Messrs. N. P. Chipman and Thomas Wilson, in support of the motion:*

The District Court did not pass in any way upon Millingar's title. That court did no more than to except the cotton which constituted the cause of the action in the State court, from the operation of its decree, and to order its release upon the written consent of the district attorney of the United States, and of the counsel of the captors. It went no further than to decide that the United States and the captors had no right to the cotton.* Millingar thus held it with no less and no greater title than if there had been no capture; and of course open to any one to assert his own ownership to it.

*Mr. Black, contra:*

In the District Court Millingar asserted himself to be owner, and proved his title to the complete satisfaction of all opposing parties. The order or decree of the District Court

---

* Gelston *v.* Hoyt, 3 Wheaton, 318.

accordingly gave the cotton to him; no trust for Gearing nor the least reference to him being made in any way whatever. Under this "authority"—exercised, of course, under a court of the United States—he acted as owner. The Supreme Court of Pennsylvania says that the order gave him no authority to act as owner; in other words, decides "against the validity" of the authority set up. This brings the case within the twenty-fifth section.

At all events, in a case not clear this court will not dispose of the case on motion, apart from the question of merits, and in advance of regular hearing.

The CHIEF JUSTICE delivered the opinion of the court.

It is insisted in behalf of the defendant in error that the question raised and decided by the Supreme Court of Pennsylvania, does not bring the case within either of the classes of which this court has jurisdiction under the twenty-fifth section of the Judiciary Act; and this must be admitted unless it can be maintained that the question was upon the validity of an authority exercised under the United States, and that the decision was against its validity.

It is clear that the case does not come under any other of the descriptions of the twenty-fifth section.

It seems equally clear that the authority of the District Court to direct the release was not drawn in question.

Was, then, the authority of Millingar over the cotton an authority exercised under the United States in virtue of the release so directed?

Something more than a bare assertion of such an authority seems essential to the jurisdiction of this court. The authority intended by the act is one having a real existence, derived from competent governmental power. If a different construction had been intended, Congress would doubtless have used fitting words. The act would have given jurisdiction in cases of decisions against claims of authority under the United States.

In respect to the question we are now considering, "authority" stands upon the same footing with "treaty" or

"statute." If a right were claimed under a treaty or statute, and on looking into the record, it should appear that no such treaty or statute existed, or was in force, it would hardly be insisted that this court could review the decision of a State court, that the right claimed did not exist.

In the case before us Millingar claimed authority under an order of the District Court. On looking at the order, we find that it does not purport to confer any authority whatever upon him. It simply relieved the cotton from the claim of the government. He claimed to be owner of it, and the order allowed him to take possession. But the court did not pass on the question of ownership or right of possession.

It left him, in these respects, precisely where he would have been, if the cotton had come into his possession without capture, and without any proceeding on the part of the government to subject it to forfeiture.

In that case he would certainly have had no "authority under the United States." We think he had as little through the proceedings of the court.

In many cases the question of the existence of an authority is so closely connected with the question of its validity that the court will not undertake to separate them, and in such cases the question of jurisdiction will not be considered apart from the question upon the merits, or except upon hearing in regular order. But where, as in this case, the single question is not of the validity but of the existence of an authority, and we are fully satisfied that there was, and could have been, no decision in the State court against any authority under the United States existing in fact, and that we have, therefore, no jurisdiction of the cause brought here by writ of error, we can perceive no reason for retaining it upon the docket.

The motion for dismissal must therefore be allowed.*

---

* Gill v. Oliver's Executors, 11 Howard, 546; Williams v. Oliver, 12 Id 119; Lewis v. Campau, 3 Wallace, 106; Boggs v. Mining Co., 3 Id. 309.