# HAMBLIN *v.* WESTERN LAND COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF IOWA.

No. 1042. Submitted January 23, 1893. — Decided February 6, 1893.

There must be at least color of ground for the averment of a Federal question in a case brought here by writ of error to the highest court of a State, in order to give this court jurisdiction.

When a line of a land grant railroad as located does not satisfy the terms of the granting act, whether the Land Department may not consider it as a temporary and provisional one, *quære.*

A reservation of public land from entry, made by the Department of the Interior as coming within the limits of a railroad grant, operates to withdraw the land from homestead entries, even if found afterwards not to come within such limits.

A valid homestead entry could not be made upon indemnity lands of the Sioux City & St. Paul Railroad Company after the patent from the United States to the State of Iowa, issued June 17, 1873, under the act of May 12, 1864, 13 Stat. 72, c. 84.

THIS case is submitted on a motion to dismiss or affirm. The facts are these: Defendant in error, the Western Land Company, on August 24, 1887, filed its petition in the District Court of O'Brien County, Iowa, to recover from the defendant Hamblin, now plaintiff in error, the possession of the northeast quarter of section 1, township 95 north, range 41 west, fifth principal meridian. Defendant appeared and answered; a trial was had, and on April 23, 1888, judgment was rendered in favor of the plaintiff, the Western Land Company, for the possession of the property. From this judgment Hamblin appealed to the Supreme Court of the State, which, on February 10, 1890, affirmed the judgment of the District Court. Thereupon Hamblin sued out a writ of error from this court.

The Land Company's record title consisted of a patent from the United States to the State of Iowa, dated June 17, 1873, conveying the land to the State for the use and benefit of the Sioux City and St. Paul Railroad Company; a decree of the Circuit Court of the United States for the Southern District of Iowa, of May 18, 1882, (*Chicago & St. Paul Railway* v.

*Sioux City &c. Railroad,* 10 Fed. Rep. 435,) modified on May 21, 1886, in pursuance of a mandate from this court, (*Sioux City & St. Paul Railroad* v. *Chicago & St. Paul Railway,* 117 U. S. 406,) by which the title of this land was adjudged held by the State in trust for the Chicago, Milwaukee and St. Paul Railway Company; a patent from the State of Iowa to the Chicago, Milwaukee and St. Paul Railway Company, of date September 27, 1886; and a warranty deed from the latter company to the Western Land Company, of date May 26, 1886.

Hamblin's claim to the land rests upon the fact that in February, 1884, nearly eleven years after the issue of the patent, he took possession and made application to enter it under the homestead laws of the United States. This application apparently failed, and he made a second application in September, 1885. He built a house upon the land, and made other improvements, and has resided on it since March, 1884. It does not appear that the Land Department ever recognized any right in him to enter the land; so that his only claim is based upon the fact of occupation, made, as he says, with a view to entering it as a homestead.

*Mr. John S. Monk* for the motion.

*Mr. W. L. Joy* opposing.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

It is doubtful whether there is a Federal question in this case. A real, and not a fictitious, Federal question is essential to the jurisdiction of this court over the judgments of state courts. *Millingar* v. *Hartupee,* 6 Wall. 258; *New Orleans* v. *New Orleans Water Works Co.,* 142 U. S. 79, 87. In the latter case it was said that "the bare averment of a Federal question is not in all cases sufficient. It must not be wholly without foundation. There must be at least color of ground for such averment, otherwise a Federal question might be set up in almost any case, and the jurisdiction of this court invoked simply for the purpose of delay."

Now, in ordinary cases, it would not be doubted that a party entering upon vacant land, the title to which had been conveyed from the general government by patent to an individual, could not create a Federal question such as to give this court jurisdiction over the judgment of the highest court of the State, by simply averring that such possession was taken with a view of entering the land under the homestead laws of the United States, and that he went through the form of making application to the local land office for permission to make such entry; for if he could, as is suggested in the foregoing quotation from 142 U. S., almost any case in ejectment could be taken from the Supreme Court of a State to this. In order that such claim of the party in possession may raise a genuine Federal question, there must be some reason to believe that the apparent legal title transferred by the patent from the United States was wrongfully conveyed, and that the real title in fact remains in the government; and whether there be such shadow upon the legal title of the Land Company, that the denial of Hamblin's right to enter the land as a homestead presents a genuine rather than a fictitious Federal question, is a doubtful matter. We must therefore investigate not merely the instruments by which the legal title passed to the Land Company, but the legislation and proceedings claimed to give authority therefor.

On May 12, 1864, Congress passed an act granting lands to the State of Iowa, to aid in the construction of two railroads. 13 Stat. 72, c. 84. So much of the first section as is material for the question here involved is as follows: "That there be, and is hereby, granted to the State of Iowa, for the purpose of aiding in the construction of a railroad from Sioux City, in said State, to the south line of the State of Minnesota, at such point as the said State of Iowa may select between the Big Sioux and the west fork of the Des Moines River; also to said State for the use and benefit of the McGregor Western Railroad Company, for the purpose of aiding in the construction of a railroad from a point at or near the foot of Main Street, South McGregor, in said State, in a westerly direction, by the most practicable route, on or near the forty-third parallel of north lat--

itude, until it shall intersect the said road running from Sioux City to the Minnesota State line, in the county of O'Brien, in said State." It will be noticed that the road of the McGregor Company was to proceed westerly, on or near the forty-third parallel, to an intersection with the Sioux City road, in the county of O'Brien. On August 30, 1864, that company filed in the General Land Office a map of the definite location of its line. This line extended westwardly to a point in section 19, township 95, range 40, in O'Brien County, where it was then expected that a junction would be formed with the Sioux City road. In July, 1867, the Sioux City Company filed its map of definite location. Both of these maps were approved. The line of the Sioux City Company ran through the northwest corner of O'Brien County, and the western terminus of the McGregor Company's line, as located, was about nine miles south and twelve miles east of the point at which the Sioux City line entered O'Brien County on the west. The McGregor line did not, therefore, intersect with the Sioux City line in O'Brien County, nor come nearer to it than 17 or 18 miles. It will be noticed that, under the statute, the Sioux City line was not to be located so as to intersect with the McGregor line, but the latter was to proceed in a westerly direction and intersect the Sioux City line. In other words, the Sioux City Company had the primary right of location, the McGregor Company the subordinate, and the latter company was to locate its line in a westerly direction so as to connect with the Sioux City line wherever located in O'Brien County. So, although the McGregor Company's map of definite location was approved when filed, yet, after the filing and approval of the map of definite location of the Sioux City Company's line, the location made by the McGregor Company was questioned as not in conformity with the terms of the act; and on September 2, 1869, a new map of definite location was filed, and this has since been recognized by the Land Department as the true line of definite location. On March 15, 1870, and May 11, 1870, the local land offices were instructed by the Commissioner of the General Land Office to recognize this as the true line, and to restore to the public domain such lands

reserved upon the location in 1864 as did not come within the ten-mile limit of the location of 1869. In other words, so far as it could, the Land Department set aside the location made in 1864, and approved and adopted that made in 1869. The land in controversy is within ten miles of the line of the McGregor Company's line, as located in 1869; but is west of the terminus of the McGregor Company's line, as located in 1864, and, therefore, not within the place or indemnity limits as determined by that location. It is also within the indemnity limits of the Sioux City Company's line. It appears from the recitals in the patent to the State, in 1873, that the land in controversy was selected as indemnity land for the Sioux City Company, and was patented to the State for the use and benefit of that company. With reference to the subsequent proceedings, it is sufficient to say that the Chicago, Milwaukee and St. Paul Railway Company succeeded, under legislation of the State of Iowa, to the rights of the McGregor Company, and constructed its road on nearly the line of 1869, and so as to intersect with the Sioux City road; that the litigation in the Circuit Court was between the Sioux City Company and the Milwaukee Company; that the outcome of that litigation was an adjudication of the rights of the Milwaukee Company to this land; and that, in pursuance of that litigation, the legal title thereto was conveyed by the State to the Milwaukee Company.

Now, the contention of plaintiff in error is, that after the approval by the Land Department of the map of definite location, filed in 1864, by the McGregor Company, the powers of that company in respect to a location were exhausted, and as authority therefor reference is made to the cases of *Van Wyck* v. *Knevals*, 106 U. S. 360, 366, and *Walden* v. *Knevals*, 114 U. S. 373. In the former of these cases this court said: "But when a route is adopted by the company and a map designating it is filed with the Secretary of the Interior, and accepted by that officer, the route is established; it is, in the language of the act, 'definitely fixed,' and cannot be the subject of future change, so as to affect the grant, except upon legislative consent." Congress never having assented to a change,

it is claimed that the only valid location was that in 1864, and that the land in controversy, not being coterminous with the line as then established, never came within the terms of the grant, but remained absolutely the property of the government, notwithstanding the error of the ministerial officers of the government in executing a patent to the State. It may be observed in reply, first, that in all the cases in which this question of the finality of a location has been before this court, the line as located conformed to and satisfied all the terms of the granting act, and the decision was that such a line, having been once definitely located, could not be changed; while in the case at bar, the line as located in 1864 did not satisfy the terms of the act, because it failed to intersect in O'Brien County with that of the Sioux City Company. Of course, until the line of the Sioux City Company was definitely located, it was impossible for the McGregor Company to determine where it could intersect with it. And it may be that the line of 1864 was justly considered as only a temporary and provisional one; so at least it seems to have been regarded by the Land Department, and we are not prepared to say that its decision was not correct.

But it is unnecessary to decide, and we do not rest the case upon this question. It is referred to as perhaps throwing such a shadow upon the record title of the Land Company, as to justify us in holding that a real and not fictitious Federal question was presented, for on other grounds the ruling of the Supreme Court of Iowa was unquestionably correct. In the first place, whether the location of the line in 1869 was of any validity or not, it was in fact accepted by the Land Department, and by the letters of March 15 and May 11, 1870, the land in controversy was, with others, withdrawn to satisfy the grant as determined by that location, and such a reservation by the Interior Department, it is well settled, operates to withdraw the land from entry under the preëmption or homestead laws. *Wolcott* v. *Des Moines Co.*, 5 Wall. 681; *Wolsey* v. *Chapman*, 101 U. S. 755; *Bullard* v. *Des Moines & Fort Dodge Railroad*, 122 U. S. 167; *United States* v. *Des Moines Navigation &c. Co.*, 142 U. S. 510. As therefore the

land was so situated that Hamblin could not make a valid homestead entry, it follows that he is not in a position to question the conveyance of the legal title by the patent from the government.

But, further, the land was within the indemnity limits of the Sioux City road; it was therefore land which might be selected by that company to supply any deficiency in the granted lands; and the patent from the United States shows that it was so selected; and it was patented to the State for the use and benefit of that company. There is nothing in the record to show that such selection was not properly made, or that the land was not rightfully conveyed to the State for the benefit of that company, unless it be the decree of the Circuit Court, and that decree, if conclusive in this litigation, establishes the validity of the line located in 1869, and the rights of the Milwaukee Company to the land by virtue of the grant and that location. Of course, Hamblin is in no position to insist upon any rights of the Sioux City Company, and the case stands thus: The patent to the State for the use and benefit of the Sioux City Company was valid, unless the location in 1869 of the McGregor Company's line was valid; if the latter was valid, then the patent should have been issued to the State for the benefit of the Milwaukee Company. The question of right as between the two railroad companies has been settled by judicial decision, and Hamblin is in no position to question the force and effect of that decision. The judgment of the Supreme Court of Iowa was unquestionably right.

*Affirmed.*