## DOUGLAS *v.* WALLACE.

ERROR TO THE SUPREME COURT OF THE STATE OF NORTH CAROLINA.

No. 611. Submitted January 27, 1896. — Decided March 2, 1896.

When there is color for a motion to dismiss on the ground of want of jurisdiction, and the claim is not so clearly frivolous as to authorize the dismissal, the court may consider and pass upon the question raised.

Claims of deputy marshals against a marshal for services stand upon the same footing as those of an ordinary employé against his employer.

THIS was a motion to dismiss a writ of error for want of jurisdiction, or to affirm the judgment of the Supreme Court of North Carolina upon the ground that the writ of error was sued out for delay merely, and the question upon which jurisdiction depended was so frivolous as not to need further argument.

The action was brought in the Superior Court of Iredell County, North Carolina, by the defendants in error, the firm of Wallace Bros., to recover of Douglas, the plaintiff in error, the amount of certain drafts drawn upon him by certain persons, and accepted by writing across said drafts " Accepted ; payable when I receive funds to the use of " the drawer of the drafts. (Signed) " R. M. Douglas, U. S. Marshal." The matters involved in the action were referred to a referee, who found that the defendant Douglas was Marshal of the United States for the Western District of North Carolina for the years 1878 to 1881, and that during this time he had in his employment as deputy marshals J. T. Patterson, Jr., in whose favor he accepted a draft for $200; W. J. Patterson, in whose favor he accepted a draft for $325, and S. P. Graham, who had a claim against the Marshal for $98.82 for official services rendered to the Marshal, all of which were assigned to the plaintiffs. The referee further reported that there had been placed to the credit of Douglas in the Treasury Department of the United States the sum of $460.76 upon claims due him for the services of J. T. Patterson, Jr., performed prior to the

acceptance of his draft for $200, not subject to any previous order, and that the same was placed to his credit since the acceptance of the draft; that there had also been placed to his credit the sum of $2274.55, due him for the services of W. J. Patterson, rendered prior to the acceptance of his draft for $325, and that the same was subject only to two drafts for the aggregate sum of $600; that of the claim of $98.82, due to S. P. Graham for services rendered as deputy, $95.62 had been placed to the credit of the defendant in the Treasury Department since the acceptance of the claim by the defendant, the remainder of said claim having been allowed by the Government; that the vouchers so traded to the plaintiffs were for services rendered prior to the said acceptance, and before the same was transferred to the plaintiffs, and that the further sum of $2858.76 was placed to the defendant's credit and control in the Treasury Department for services rendered by Graham, out of which sum defendant received $900, leaving $1958.76 to the credit of the defendant since the acceptance. The referee accordingly reported that the plaintiffs were entitled to payment for the full amount of their claim.

Before the judgment of the court was rendered, the defendant moved that the action be dismissed, upon the ground that the evidence disclosed that the drafts and accounts declared upon were drawn upon claims, or an interest in claims, against the United States before their allowance, and were, therefore, null and void under Rev. Stat. § 3477, inhibiting the assignment of claims against the United States. This motion was overruled, the court proceeded to consider the case upon the report of the referee and exceptions thereto, and entered a judgment in favor of the plaintiffs, from which the defendant appealed to the Supreme Court of North Carolina, which affirmed the judgment of the court below. Whereupon defendant sued out this writ of error.

*Mr. Robert M. Douglas,* plaintiff in error, in person.

*Mr. W. P. Montague* for defendants in error.

Mr. Justice Brown delivered the opinion of the court.

The only Federal question in this case was raised upon the motion of the defendant to dismiss, upon the ground that the evidence disclosed that the drafts and accounts declared upon were drawn upon claims, or an interest in claims, against the United States before their allowance, contrary to the provisions of Rev. Stat. § 3477, which declares that " All transfers and assignments made of any claim upon the United States, or of any part or share thereof, or interest therein; whether absolute or conditional, and whatever may be the consideration therefor, and all powers of attorney, orders or other authorities for receiving payment of any such claim, or of any part or share thereof, shall be absolutely null and void, unless they are freely made and executed in the presence of at least two attesting witnesses, after the allowance of such a claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof," etc.

While we are of opinion that the claim of a Federal question thus presented is not so clearly frivolous as to authorize us to dismiss the case, within the rulings in *Millingar* v. *Hartupee*, 6 Wall. 258 ; *New Orleans* v. *New Orleans Waterworks*, 142 U. S. 79, 87 ; and *Hamblin* v. *Western Land Co.*, 147 U. S. 531, we think there was such color for the motion to dismiss as authorizes us to proceed to the consideration of the question involved.

Upon the merits, we think the position assumed by the defendant is wholly untenable. The deputy marshals, for whose services the drafts in question were accepted, not only had no claim upon the United States, and no part or share in any such claim, but they had no proper interest in any such claim. Their accounts, for which the drafts were accepted, were claims against the Marshal personally, and not against the United States, though they were paid out of the funds to be realized by the Marshal from the government. Although deputies are recognized by law as necessary to the proper administration of the Marshal's office, they receive from the government neither salaries nor fees, and the government has no dealings directly with them. The accounts are rendered by the Marshal, who charges not only for his own services,

but for those of each of his deputies, who are appointed by the Marshal personally and are accountable to him alone, though subject to be removed by the court at its pleasure. Rev. Stat. § 780. The Marshal makes his own bargains with his deputies, and is unrestricted in the amount he shall pay them, which may be either a salary or a proportion of the fees earned by them, except that, in computing the maximum compensation to which he is entitled, the allowance of no deputy shall exceed three fourths of the fees and emoluments received or payable for the services rendered by him. § 841. He is thus bound to charge himself with a quarter of the fees earned by each deputy. Their claims for services against the Marshal stand upon the same footing as those of an ordinary employé against his employer, and are not even contingent upon the Marshal collecting his own accounts against the United States, although in the present case the Marshal accepted the drafts in suit upon such contingency.

It is true that in a narrow sense of the word these deputies may be said to have had an interest in the claim of the Marshal against the United States, inasmuch as their drafts were not payable until the Marshal received funds for the use of the drawers, or rather applicable to the services rendered by the drawers; but this was rather a method of fixing a date for the maturity of the drafts than a contingency upon the happening of which the claims of the deputies should be payable. If, for instance, the Marshal were to give his grocer or other ordinary creditor a note, payable when a certain claim of his against the government were paid, such creditor might be said to be interested in the payment of the claim; but he could not, in the sense of the statute, be said to have an interest in the claim itself, since his debt existed entirely independently of the claim. Had the drafts in this case been surrendered and cancelled, the claims would still have existed against the Marshal personally, and, in the absence of any agreement to the contrary, might have been subject to enforcement. Their claims were for services rendered to the Marshal, though the amount of such claims was measured by the fees which the Marshal was entitled to charge the government for

their services. Had the Marshal neglected to include them in his accounts their validity as claims against him would not have been affected, and if they chose to await payment of their claims until the Marshal received money applicable to their services, this was a matter of favor to him. The plaintiffs are no more the assignees of the deputies' claims against the government than the deputies were of a share or interest in the Marshal's claim against the government. Upon the theory of the defendant the deputies would be without remedy. They would have no claim directly against the government, because he stands between them; they would have none against him personally, since, by his acceptance of their drafts, they became assignees of a share or interest in his claim against the government.

The judgment of the Supreme Court of North Carolina is

*Affirmed.*