KING et al. v. CITY OF ST. LOUIS et al.

JOY v. SAME.

(Circuit Court, E. D. Missouri, E. D.   December 15, 1899.)

Nos. 4,217, 4,225.

**1. JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION—RIPARIAN RIGHTS.**

An action involving the right to accretions along the river front by the owners of lands whose title is derived through a patent, issued pursuant to the provisions of an act of congress, in which the lands are described as "lying on the west bank of the Mississippi river," presents a case for the construction of the grant, and is a question arising under a law of the United States, of which a federal court has jurisdiction.[1]

**2. SAME.**

The general doctrine that local laws must determine the riparian rights of owners of real estate bounded on navigable rivers is subject, in all cases, to a consideration of the primary right of the United States in navigable waters for the purposes of commerce; and, in construing a grant by the United States bounded on such a river, a consideration of other matters besides the local law may become necessary in determining the intent and scope of the grant.

On Demurrer to Petition in Each Case.

E. P. Johnson, for plaintiffs.

B. Schnurmacher and Chas. Claflin Allen, for defendants.

ADAMS, District Judge.   These two cases in ejectment are now before the court on demurrers to the petitions.   The demurrers present the question whether a federal question is involved, so as to confer upon this court jurisdiction to hear and determine the cases. The averments of the petitions show that the plaintiffs claim title to the land described in the petitions under and by virtue of a patent issued to Louis Le Baume, or his legal representatives, pursuant to the provisions of an act of congress approved March 3, 1807, granting to them land "lying on the west bank of the Mississippi river," between the northern and southern boundaries of survey No. 3,333.   As a result it is claimed that the plaintiffs are constituted riparian owners, invested with the title to all accretions along that front since the date of the grant.   It is claimed by the plaintiffs that their title depends upon the proper construction of the letters patent to Le Baume, and that the true construction of the letters patent is the controlling question in the cases.   It is further alleged in the petitions that a controversy has arisen between the plaintiffs and the defendants as to the proper construction of the letters patent, in this:   That the plaintiffs claim that Le Baume, or his legal representatives, by the descriptions and necessary intendments of their grant, were vested with the title to and ownership of all land thereafter to be formed by accretions or gradual deposits from the river along the eastern boundary.   It is further alleged in the petitions that the plaintiffs' claim is disputed by the defendants.   Plaintiffs further allege that

---

[1] For federal question as ground of jurisdiction, see note to Robbins v. Ellenbogen, 18 C. C. A. 86, and, supplementary thereto, note to Mecke v. Mineral Co., 35 C. C. A. 155.

defendants claim under and by virtue of a certain act of congress approved June 12, 1866 (14 Stat. 62), whereby the right, title, and interest of the United States in and to the wharfs, streets, lanes, etc., within the corporate limits of the city of St. Louis were granted in fee simple absolute to the city of St. Louis. The contention in the case is whether the plaintiffs took, by their patent, title to any and all possible accretions along the west shore of the Mississippi river opposite their fronts, or whether the same remained in the United States, and subject to its subsequent disposition, and whether this contention presents a federal question within the meaning of the judiciary acts. It is contended by the city of St. Louis that the only question in the case is one of boundaries, resulting finally in the question of riparian ownership, which is dependent upon local law for its determination; and the defendants cite and rely in support of their proposition that no federal question is involved upon the case of Hamblin v. Land Co., 147 U. S. 531, 13 Sup. Ct. 353, 37 L. Ed. 267, and several other cases, mainly from the circuit courts. Plaintiffs, on the contrary, rely upon the case of Shively v. Bowlby, 152 U. S. 1, 14 Sup. Ct. 548, 38 L. Ed. 331, and several other cases, including the case of Railroad Co. v. Schurmeir, 7 Wall. 272, 19 L. Ed. 74, which is cited with approval in Shively v. Bowlby, supra. In Shively v. Bowlby it appears that Shively was the owner of a donation land claim as laid out and recorded by him under the provisions of the act of congress of September 27, 1850 (9 Stat. 496); that afterwards the United States issued a patent to him for his claim, bounding the same on one side by the Columbia river. Bowlby afterwards secured a conveyance from the state of Oregon to all lands lying between high-water and low-water mark along the front of Shively's grant on Columbia river. A controversy arose between Shively and Bowlby concerning their respective rights. Shively claimed, by virtue of his grant from the government, all the tide lands and riparian and wharfing rights in front of his lands. Bowlby claimed the right to the same by virtue of his conveyance from the state. The case, as above stated in very general terms, manifestly is quite like the one now at bar. Mr. Justice Gray, in delivering the opinion of the supreme court of the United States on a motion to dismiss for want of jurisdiction, says:

"The only matter adjudged [by the supreme court of the state of Oregon] was upon the counterclaim. The judgment against its validity proceeded upon the ground that the grant from the United States upon which it was founded passed no title or right, as against the subsequent deeds from the state, in lands below high-water mark. This is a direct adjudication against the validity of a right or privilege claimed under a law of the United States, and presents a federal question within the appellate jurisdiction of this court. Rev. St. § 709. That jurisdiction has been repeatedly exercised, without objection or doubt, in similar cases of writs of error to the state courts. [Here several authorities are cited.] It was argued for the defendants in error that the question presented was a mere question of construction of a grant bounded by tide water, and would have been the same as it is if the grantor had been a private person. But this is not so. The rule of construction in the case of such a grant from the sovereign is quite different from that which governs private grants. The familiar rule and its chief foundation were felicitously expressed by Sir William Scott: 'All grants of the crown are to be strictly construed against the grantee, contrary to the usual policy of the law in the consideration of grants, and upon

this just ground: that, the prerogatives and rights and emoluments of the crown being conferred upon it for great purposes, and for the public use, it shall not be intended that such prerogatives, rights, and emoluments are diminished by any grant beyond what such grant by necessary and unavoidable construction shall take away.' Many judgments of this court are to the same effect. [Here several cases are cited.] The present case being clearly within our jurisdiction, we proceed to the consideration of its merits."

I regard this last-mentioned case as direct and controlling authority, and strictly applicable to the case now before the court. I have read carefully a large number of cases to which my attention has been called by counsel, and find nothing in them to shake the authoritative character of this last-mentioned case, and, following its teachings, the court must take jurisdiction of the cases now under consideration. I may incidentally add that the general doctrine invoked by defendants that local laws must determine the riparian rights of owners of real estate bounded on navigable rivers is subject in all cases to a consideration of the primary right of the United States in navigable waters for the purposes of commerce. See Gibson v. U. S., 166 U. S. 271, 17 Sup. Ct. 578, 41 L. Ed. 996. In cases where such considerations are permissible,—like that now before the court,—the true construction of the grant may involve a consideration of other matters besides the local laws applicable to riparian rights. The real question in these cases is, what was the intent of the United States in granting the lands in question to Le Baume and his legal representatives? Was it to convey to him and his legal representatives the accretions which might attach to the land by reason of the change in the currents of the river, or was the intent to limit the grant to lands on the western shore or high-water mark of the river as it existed at the day of the grant? This question, in my opinion, in the light of the authorities, must be held to be a federal question. The demurrers are overruled.