# Newton v. Luzerne County.

There are not two distinct offices, one of Constable, and the other of deputy, and fees belonging to each. There is but a single office, to wit, that of Constable, who may execute the office by. himself or by his deputy, the fees belonging to the principal. In this State a Constable's power to appoint a deputy is not conferred by statute. It existed at common law, and its existence is recognized by statute. That a court may refuse to admit (approve) an unqualified ministerial officer, or that they may remove the officer if he is found unfit is no conference of authority upon the Court to appoint to the office.

Deputy Constables are simply the assistants or agents of the Constable who appoints them. They act for and in the name of their principals, but the principal is still Constable and capable to act and execute process. They are in the employ of the Constable who appoints them, and clearly within the principle of law, that without statutory warrant, they cannot be paid out of the public treasury.

The rule is that before a public officer can demand and receive compensation for services rendered for a County in the absence of a contract, he must show, first, a statute authorizing him to receive compensation for such services, and fixing the amount thereof; and, second, a statute authorizing the Commissioners to pay for such service out of the County treasury. A County cannot be liable for fees and charges of officers without an express statute upon the subject.

CONSTABLES—DEPUTY CONSTABLES—APPROVAL—LIABILITY OF

COUNTY FOR FEES.

No. 237, Jan. Term, 1903, C. P. of Luzerne County.

Thomas F. Farrell, Esq., for plaintiff.

William R. Gibbons, Esq., for defendant.

Opinion by WHEATON, A. L., J., January 2, 1903.

## OPINION:

The plaintiff in this case is a Deputy Constable, appointed by a Constable, with the approval of the Court of Quarter Sessions of the proper county. The question at issue is his right, as Deputy, to collect, for himself and in his own name, from the county, fees for certain services performed in the exercise of his duties as Deputy.

In Pennsylvania a Constable's power to appoint a Deputy is not conferred by statute. It existed at common law, and its existence is recognized by statute. There are not two distinct offices, one of Constable and the other of Deputy, and fees belonging to each. There is but a single office, to wit, that of Constable, who may execute the office by himself or his Deputy.

Newton v. Luzerne County.

The fees belong to the principal. Campbell v. Hewlitt, 71 E. C. L. Reps. 270.

That a Court may refuse to admit (approve) an unqualified ministerial officer, or that they may remove the officer if he is found unfit, is no conference of authority upon the Court to appoint to the office. And if there has grown up a usage by which the Court has arrogated to itself such authority, such usage is immaterial because it can have no legal origin. Lord Coleridge, in Campbell v. Hewlitt, supra.

The Pennsylvania statutes requiring the approval of the Court of Quarter Sessions are merely restrictions upon the common law right to appoint. At the common law the Deputy was paid by the Constable who appointed him. If no express agreement for compensation was made the Deputy's only remedy was to sue the Constable on a quantum meruit. Goldophin v. Tudor, 6 Mod. Reps, 235, note.

No statute of Pennsylvania has changed the method and put the burden of paying a Deputy on the public funds, except only in the particular instances provided for by the Act of 1899, which has no bearing upon the claim in the case at bar. The analogy between Deputy Constables and Deputy Marshals of the United States is persuasive. It is provided by Act of Congress that "every Marshal may appoint one or more Deputies, who shall be removable from office by the Judge of the District Court, or by the Circuit Court for the district, at the pleasure of either." Revised Statutes of U. S., Sec. 780.

So far as the source of appointment is concerned there seems to be no material difference between the power conferred upon the designated Court to remove at pleasure, as provided by the Act of Congress, and the power to approve in the first instance as provided by the Pennsylvania statute. As in Pennsylvania there is no statute providing for the payment of Deputy Constables out of the public funds, but only for the payment of Constables, so in the United States there is no statute providing for payment of Deputy Marshals out of the public funds,

but only for the payment of Marshals. And it has been held that a Deputy Marshall has no claim against the United States, but only against his principal, the Marshal. Douglas v. Wallace, 161 U. S., 346.

Deputy Constables are simply the assistants or agents of the Constables who appoint them. Snyder's Petition, 2 L. V. R., 424. They act for and in the name of their principals, but the principal is still Constable, and capable to act and execute process. McCormick v. Miller, 3 P. & W. 236. They are in the employ of the Constable who appoints them, and clearly within the principle of law, that without statutory warrant they cannot be paid out of the public treasury. 2d Edition Am. & Eng. Encyc. of Law, Vol. 9, p. 384.

The principle is expressed as follows: "The rule is that before a public officer can demand and receive compensation for services rendered for a county, in the absence of a contract, he must show, first, a statute authorizing him to receive compensation for such services, and fixing the amount thereof; and, second, a statute authorizing the Commissioners to pay for such services out of the county treasury. A county cannot be liable for fees and charges of officers without an express statute upon the subject." State v. Roach, 123 Ind. 167, and this is the law in Pennsylvania. Wayne County v. Waller, 90 Pa., 99; Lehigh Co. v. Semmel, 124 Pa., 358; Boro. v. Mast, 15 Superior Ct., 51. There is no such statute.

While it is not essential to the determination of this case, I cannot refrain from expressing doubt that there is any warrant in law whereby a Constable who has qualified and entered upon the duties of his office may appoint a deputy by way of "general deputation." I am aware of the usage; but if Lord Coleridge's determination in Campbell v. Hewlitt, supra, is correct, such usage, being without legal origin, is immaterial. See Castner v. Montour Co., 13 Superior Ct. 514. At the common law, a Constable had no right to appoint a permanent deputy for the gen-

Newton v. Luzerne County.

eral discharge of the duties of his office. Rex. v. Stubbs, 3 T. R. 403; Medhurst v. Waite, 3 Burr, 1259.

The argument in favor of such right in Pennsylvania, apart from the usage, is based upon its apparent recognition in the Acts of 1820 and 1834. In this respect the Act of 1834 is merely a repetition of the language of the Act of 1820, 7 Smith 308, Sec. V. The Act of 1820 is a supplement to the Act of March 20, 1810. It is provided by Sec. XXIX of the latter Act that "the electors of each county, town, township, ward or district, which now is, or hereafter shall be, in any of the counties within this commonwealth, shall annually, on the same day, and at the same place, where they meet to choose supervisors of the high-ways, elect two reputable citizens in said township, etc., and re-turn the names of the persons so elected to the next Court of Quarter Sessions of the proper county, and the said Court shall appoint one of them to be Constable," etc. Then follows a clause as to freeholders and non-freeholders and security.

Then the Act goes on to say: "But if he does not possess a freehold estate, as aforesaid, or enter the security as above required, or possessing a freehold as aforesaid, and refuses to take upon himself the office of Constable, or if the electors in any township, etc., shall neglect or refuse to return two citizens to the said office, as aforesaid, then and in either case, the Court shall appoint another proper person * * * to serve as Con-stable; and every person elected or appointed, or who shall be appointed by the Court, and who may possess a freehold estate of the value above mentioned, and shall refuse or neglect to take upon himself the office of Constable, or shall not procure a Deputy to undertake the duties of said office, for whose con-duct in the same he shall be responsible, shall be fined by the Court in the sum of forty dollars," etc.

The deputation contemplated by this Act was in effect the providing of a substitute. It was a general deputation. When, therefore, the supplemental Act of 1820 was passed, in which the words "general deputation" first occur, it seems plain to me

that the language was used to refer to the only kind of general deputation which was then known to the law, to wit, the kind provided for by the Act of 1810.

The Act of 1810 was in opposition to that line of public policy, which theretofore and thereafter sought, under penalties, to compel the performance of the duties of the office of Constable by the man who had been elected or selected, to fill the office, to the extent at least of permitting a freeholder to decline the office, and substitute another man in his place, such substitute being named in the Act a "Deputy."

It was in the line of public policy that the supplement of 1820 should say, in effect, "he may not do this except with the approval of the Court of Quarter Sessions." It was still further in line with that policy when it was provided by subsequent legislation, in effect, that if he failed to qualify he should have no right to substitute or deputize another to fill the office, but the Court should appoint a Constable to fill the vacancy.

But in all this I find no authority whereby a man who has qualified, and entered upon the duties of his office as Constable, may generally depute the performance of those duties to another, and if I am correct, no implication of such authority may be derived from the language of the Act of 1820 or 1834, which is properly and solely referable to quite another situation. Such authority is against the policy of the common law and the statutes. The effect of this construction would require Constables to depute their ministerial duties specially, for causes then existing, and of such character as to meet with the approval of the Court of Quarter Sessions. This is recognized as the true basis upon which the right to approval rests. Deputy Constables, Bregy, J., 4 Dist. R. 217.

Under such deputation there would be little likelihood of a Deputy becoming impressed with the erroneous idea that he is the Constable, or, in effect, the Constable so far as payment out of the public funds is concerned. It would be apparent to him that he was the hired man of the Constable, and there would

oe less deputizing and more instances of performance of the duties of the office by the man who has been chosen by the people to perform those duties.

Judgment for defendant, with costs of suit.

Reported by I. V. Robbins, Esq.,

Wilkes-Barre, Pa.