YORK COUNTY SAV. BANK v. ABBOT.

(Circuit Court, D. Maine. August 18, 1904.)

No. 542.

1. FEDERAL COURTS—MOTION TO DISMISS FOR WANT OF JURISDICTION.

On a motion to dismiss for want of jurisdiction, the court will not ordinarily enter into a consideration of the merits, but, if the case shows a bona fide claim within the jurisdiction of the court, with a reasonable plausibility in support thereof, the question of jurisdiction will be passed until the cause is considered on the merits on formal pleadings.

2. SAME—JURISDICTION—LOCAL ACTION.

A suit in equity by a lessee against a nonresident lessor to enforce alleged rights under the terms of the lease, by requiring the defendant to elect either to buy the building from, or to sell the land to, complainant at an appraised value, or to have the court make such election and enforce its decree through a master or trustee authorized to execute a deed, may be one to enforce a lien or claim to the property, which, when in good faith, is on the face of the bill within the jurisdiction of the Circuit Court of the United States for the district in which the property is situated, under section 8 of the judiciary act of March 3, 1875, c. 137, 18 Stat. 472 [U. S. Comp. St. 1901, p. 513].

In Equity. On motion to dismiss for want of jurisdiction.

E. W. Freeman and Enoch Foster, for plaintiff.

Brandeis, Dunbar & Nutter (Bird & Bradley, specially), for defendant.

PUTNAM, Circuit Judge. The pending matter is a motion by the respondent to dismiss this case on the ground that the court has no jurisdiction thereof. The motion as originally drawn alleged another reason for dismissal, which has been obviated by subsequent proceedings in reference thereto.

The case, for present purposes, is stated with sufficient accuracy by the respondent as follows:

"This is a bill in equity, filed in March, 1901, by the York County Savings Bank of Biddeford, Maine, against Martha T. Abbot of Cambridge, Mass. The material facts as alleged in the bill and appearing from the record are as follows:

"On October 1, 1867, Eben Steele, of Portland, owned in fee a lot of land on Middle street, Portland. On that day he made a lease of the premises to one Lewis for twenty-five (25) years at a yearly rent of $450, payable quarterly.

By the lease the lessee undertook to erect a building on the premises within one year. The lease then provided as follows:

" '(1) At the end of said term of twenty-five years the lessor or his representatives shall have the privilege of extending this lease by a perpetual lease forever, to the lessee, or his assigns at the above described rent and taxes, or if the lessor or his assigns or representatives prefer, they may have an appraisal of the lot and building thereon, with the option on their part of purchasing said buildings at such appraised value, or of selling to the lessee or his representatives the lot at such appraised value, whichever the lessor, his assigns or representatives may then elect. Each party on request to choose an appraiser and the two so selected to choose a third; and if either party neglects to choose an appraiser, such appraiser is to be selected for such party by the Judge of Probate of Cumberland County; and the appraisal of a majority of such appraisers to be conclusive, in case of disagreement. And the said lessee doth hereby covenant for himself, his heirs and representatives to purchase said lot at such appraisal, or to convey said building to the lessor or his representatives, according to the decision and election of said lessor, or his representatives, or to execute and complete a perpetual lease of said lot as above stipulated at the end of said term, if the lessor, or his representatives shall demand such lease. The building erected on said lot is hereby pledged and conveyed to the lessor, his heirs, executors. and assigns, as security for the faithful performance of this agreement, and every covenant therein by the lessee, his heirs, executors or assigns.'

"The lessee's interest under the lease of October 1, 1867, subsequently and before the end of the term became and is vested in the complainant. The lessor, Eben Steele, died in 1871, and devised his interest in the leased premises to Abby A. Steele and Martha T. Abbot. Mrs. Abbot, in 1876, released all interest to Miss Steele, and on the death of the latter, in 1898, by inheritance became sole owner.

"Abby A. Steele, it is alleged in the bill, did not within one year after the expiration of the lease exercise her right to elect to extend the lease as a perpetual lease, and neither she nor the respondent at any time prior to June 1, 1899, or thereafter, requested the complainant to appoint an appraiser.

"On June 1, 1899, the complainant, in writing, requested the respondent to choose an appraiser, but the respondent neglected and refused to do so. Thereafter, and prior to November 10, 1899, the complainant selected an appraiser. and on November 10, 1899, applied to the judge of probate for Cumberland county, Me.. to appoint an appraiser, and the judge, after giving notice to the respondent of such application, did appoint an appraiser, and these two selected a third. The appraisers subsequently notified both parties of their intention to appraise the premises at a time and place specified, and at such time and place did appraise the building at $3,500, and the land at $2,887.50, and notified the parties thereof.

"On August 24, 1900, the complainant requested the respondent to exercise her option to purchase the building from or sell the land to the complainant. each at the appraised price, and notified her of its willingness to abide by and carry out such election by her; but the respondent did not do either of the acts. On October 30, 1900, the complainant tendered to the respondent for execution a quitclaim deed of the land, and tendered $2,887.50 in payment therefor, and tendered a bill of sale of the building for delivery upon payment of $3,500, but the respondent refused to accept either offer.

"The bill prays that the respondent be ordered to elect whether to buy the building from or sell the land to the complainant, each at the appraised price; that the court appoint a master to exercise this right of election; that the court itself exercise this right of election; that the court order the respondent, pursuant to the election made under one or the other of the first three prayers, either to pay to the complainant $3,500 for a bill of sale of the building, or execute and deliver a deed of the land for $2,887.50; that the court appoint a master or some suitable person to execute the order made under the preceding prayer; that the court restrain the respondent pending the suit from incumbering or transferring the property; for general relief.

"On September 25, 1901, the respondent, appearing specially for the purpose by leave of court, filed a motion to dismiss the bill for want of jurisdiction."

The specific reasons assigned by the respondent for raising the objection that this court has no jurisdiction are as follows:

First. There is no obligation binding upon the respondent to be enforced.

Second. The court can have no jurisdiction unless there is an obligation enforceable against the land.

Third. If any obligation exists binding on the respondent, it is one not enforceable against the land.

Fourth. If the alleged obligation is in any aspect enforceable against the land, it is not enforceable in this court.

The motion, of course, involves the construction and application of the eighth section of Act March 3, 1875, c. 137, 18 Stat. 472 [U. S. Comp. St. 1901, p. 513], the essential parts of which are as follows:

"When in any suit, commenced in any Circuit Court of the United States, to enforce any legal or equitable lien upon, or claim to, or to remove any incumbrance, or lien, or cloud upon the title to real or personal property within the district where such suit is brought, one or more of the defendants therein shall not be an inhabitant of, or found within, the said district, or shall not voluntarily appear thereto, it shall be lawful for the court to make an order directing such absent defendant or defendants to appear, plead, answer, or demur," etc.

As apparent from the specific grounds assigned for the dismissal, it might well be apprehended the propositions which have been submitted to us by the respondent relate mainly to the merits of the cause. On a motion to dismiss for want of jurisdiction it is not to be expected that the court will ordinarily enter on a discussion of the merits. If the case shows a bona fide claim within the jurisdiction of the court, with a reasonable plausibility in support thereof, it behooves the court to pass on the merits on a formal plea, demurrer, or answer, rather than summarily on a motion to dismiss. Of course, there are exceptional cases, like North American Company v. Morrison, 178 U. S. 262, 20 Sup. Ct. 869, 44 L. Ed. 1061, and Magruder v. Armes, 180 U. S. 496, 21 Sup. Ct. 454, 45 L. Ed. 638, where, notwithstanding there were specific allegations, which, standing alone, were sufficient for jurisdictional purposes, yet nevertheless, from the general tenor of the whole declaration, the court perceived that the specific allegations did not truly state the controversy between the parties. But in Millingar v. Hartupee, 6 Wall. 258, 262, 18 L. Ed. 829, it was said, in discussing a motion to dismiss, as follows:

"In many cases the question of the existence of an authority is so closely connected with the question of its validity that the court will not undertake to separate them, and in such cases the question of jurisdiction will not be considered apart from the question upon the merits, or except upon hearing in regular order."

In Douglas v. Wallace, 161 U. S. 346, 348, 16 Sup. Ct. 485, 40 L. Ed. 727, this expression in Millinger v. Hartupee was practically applied, and various decisions cited showing it was in accordance with the settled practice of the court. Indeed, it is the constant practice of that tribunal to postpone motions to dismiss to be heard in connection with the merits. In City Railway Company v. Citizens'

Railroad Company, 166 U. S. 557, 563, 17 Sup. Ct. 653, 655, 41 L. Ed. 1114, it was said:

"All that is necessary to establish the jurisdiction of the court [meaning in that case the Circuit Court of the United States] is to show that the complainant had, or claimed in good faith to have, a contract with the city, which the latter had attempted to impair."

The expression in this citation which we emphasize is covered by the words "claimed in good faith." To apply this expression precisely to the present case, as it is apparent that the complainant, in good faith, seeks to proceed in a controversy which it in good faith regards as within our jurisdiction, we feel authorized, on a motion to dismiss for want of jurisdiction, to decline any discussion of the merits so far as it is possible for us so to do. Not only is this the more convenient practice, but it protects against a hasty adjudication on a summary proceeding with reference to substantial questions.

In view of these propositions, but a very few observations are required. The first of the respondent's specifications with reference to this motion to dismiss is to the effect that here is no obligation binding on her, which is clearly to the merits alone, and cannot be entered upon in this summary way. All the others are limited to the land which has been described. On this account alone those specifications are defective. This bill lies not merely in reference to the land, but also covers the buildings, which, although to be regarded as personal property, have, under the circumstances of this case, an absolutely local situs, and are clearly within the letter and spirit of section 8 of the act of 1875. Goodman v. Niblack, 102 U. S. 556, 26 L. Ed. 229; Jellenik v. Huron Copper Min. Co., 177 U. S. 1, 20 Sup. Ct. 559, 44 L. Ed. 647.

Neither is the case taken out of the act of 1875 because the complainant's claim or right is put as conditional, dependent on the election of the respondent, or in any manner having an apparent double aspect. The statute covers all claims, whether absolute or contingent. Neither is it excluded from the operation of the statute because it relates to the adjustment of rights depending on a formal written agreement, so that in some respects they cannot be regarded as adversary. The true underlying proposition was fully settled in the way we state it in Greeley v. Lowe, 155 U. S. 58, 67, 74, 15 Sup. Ct. 24, 39 L. Ed. 69. That proceeding was one for the partition of real estate between tenants in common, where there was no dispute as to title, but the only thing involved was an adjustment of the admitted respective interests of the various tenants in common. Greeley v. Lowe covers in this respect the case at bar, and even goes beyond it; but it is sufficient to say that in each suit there was a common interest, dependent in one on an admitted title and in the other, that is before us, on the construction of a formal contract; in either instance to be determined and adjusted in accordance with the statute of 1875. Neither is the doubt which is suggested with reference to parties pertinent to this motion to dismiss. If any question with reference to parties develops on the formal hearing, leave to amend will be granted as of course; and it may

be that any question of that kind will be anticipated by the complainant providing for it in advance. If not so provided for, the question of parties is so difficult, and so far involves the merits, that the court declines at the present stage to dismiss on that account, both by reason of the difficulty involved and because also a mere question of parties, which in this case is whether or not the administrator of the lessor should be joined as respondent with the owner of the fee, is not cognate to the question now specially urged upon us—that is, whether we can take jurisdiction over this controversy in any event.

This leaves only one proposition which can be claimed to be strictly one of jurisdiction, and which, therefore, ought to be considered by us; that in the absence of any special statutory provision as to the form of relief in case the complainant is entitled to any, a Circuit Court of the United States sitting in equity is powerless to shape it. Of course, if we are powerless to give relief in case we find the merits are with the complainant, it would be fruitless for us to proceed further and the bill should be dismissed; but if the complainant has any right we are confident that some form of relief will be found, although it would not at present be prudent to assume to forecast its particular character, nor would we be able to do so with certainty. What it would be will, of course, depend on the particular result on the merits. In this respect the respondent shares the impression which has gone abroad from the decision of the Supreme Court in Hart v. Sansom, 110 U. S. 151, 3 Sup. Ct. 586, 28 L. Ed. 101. Taken broadly, and in some aspects in which it might be taken, the result of that case would be astonishing, and might afford serious difficulties in the way of the present complainant; but Hart v. Sansom has never been taken seriously since it was announced. Indeed, subsequent decisions of the Supreme Court have so cut it down that it must be held to have decided only as to the particular form of procedure marked out by the judgment which it reviewed. Sugg v. Thornton, 132 U. S. 524, 10 Sup. Ct. 163, 33 L. Ed. 447; Arndt v. Griggs, 134 U. S. 316, 10 Sup. Ct. 557, 33 L. Ed. 918; Carpenter v. Strange, 141 U. S. 87, 106, 11 Sup. Ct. 960, 35 L. Ed. 640; and other cases which might be cited. That it has no application to the federal courts proceeding upon broad principles of equity was formally decided in Lynch v. Murphy, 161 U. S. 247, 250, 251, 252, 16 Sup. Ct. 523, 40 L. Ed. 688, where exactly the relief prayed for by the complainant, in the way of appointing a trustee to make a conveyance of the title of an absent party by the Supreme Court of the District of Columbia, was sustained.

We do not think that we can go further on this motion to dismiss without involving ourselves in discussing the merits to an extent which we wish to avoid; nor do we think it necessary that we should do so.

The motion of the respondent, filed on September 25, 1901, to dismiss this bill for want of jurisdiction, is denied, without prejudice to any matter covered by it, or to which it was intended to relate, so far as it may affect the merits of the cause, or may be renewed on demurrer, plea, or answer.