# NEW ORLEANS *v.* NEW ORLEANS WATER WORKS COMPANY.

# CONERY *v.* NEW ORLEANS WATER WORKS COMPANY.

## ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

Nos. 632, 639.   Argued November 2, 3, 1891. — Decided December 14, 1891.

If it appear in a case, brought here in error from a state court, that the decision of the state court was made upon rules of general jurisprudence, or that the case was disposed of there on other grounds, broad enough in themselves to sustain the judgment without considering the Federal question, and that such question was not necessarily involved, the jurisdiction of this court will not attach.

Before this court can be asked to determine whether a statute has impaired the obligation of a contract, it must be made to appear that there was a legal contract subject to impairment, and some ground to believe that it has been impaired.

In order to constitute a violation of the constitutional provision against depriving a person of his own property without due process of law, it should appear that such person has a property in the particular thing of which he is alleged to have been deprived.

The contract between the city of New Orleans and the Water Works Company, which forms the basis of these proceedings, was void as being *ultra vires;* and, having been repudiated by the city, cannot now be set up by it as impaired by subsequent state legislation.

A municipal corporation, being a mere agent of the State, stands in its governmental or public character, in no contract relation with its sovereign, at whose pleasure its charter may be amended, changed or revoked without the impairment of any constitutional obligation; but such a corporation, in respect of its private or proprietary rights and interests, may be entitled to constitutional protection.

There was no contract between the city and the Water Works Company, which was protected against state legislation by the Constitution of the United States.

The repeal of a statute providing that a municipal government may set off the taxes of a water company against the company's rates for water, and the substitution of a different scheme of payment in its place, does not deprive the municipality of its property without due process of law, in the sense in which the word " property " is used in the Constitution of the United States.

The court stated the case as follows:

This was a motion to dismiss the writs of error in these cases upon the ground that no Federal question was involved. The suit was originally begun by the filing of a petition in the Civil District Court for the parish of Orleans by Edward Conery, Jr., and about forty others, resident tax-payers of the city of New Orleans, against the New Orleans Water Works Company and the city, to enjoin the city from making any appropriations or drawing any warrants in favor of the Water Works Company under a certain contract set forth in the bill.

The petition set forth in substance —

1. That the legislature in 1877 incorporated the New Orleans Water Works Company for the purpose of furnishing the inhabitants of the city with an adequate supply of pure water, granting it the exclusive privilege of furnishing water to the city and its inhabitants, by means of pipes and conduits, for fifty years from the passage of the act; that the eleventh section of the act provided that the city should be allowed to use all water for municipal purposes free of charge, and in consideration thereof the franchises and property of the company should be exempt from taxation, municipal, state or parochial; that in 1878 the act was amended in such manner as to make the company liable to state taxes; and that the act was accepted by the city, by the Water Works Company and by all others interested, and the property purchased by the city from the Commercial Bank was transferred to the corporation.

2. That at the time the company was incorporated it was known by every intelligent person in the State that the legislature had no power to exempt property from taxation, except such as was used for church, school or charitable purposes; that for several years the Water Works Company supplied the city with water, and the city demanded of the company no taxes; that in the year 1881 the city brought suit against the company for the sum of $11,484.87, taxes assessed upon its property for that year; that the Water Works Company reconvened in that suit and demanded payment for the water

it had furnished; that in the Civil District Court, where the case was tried, judgment was rendered in favor of the city for the taxes, and also in favor of the company against the city for the value of the water supply for that year, namely, $40,281.87; that the city appealed, and in the Supreme Court the judgment in favor of the city was affirmed, but the judgment in favor of the company was reduced to $11,484.87, the exact amount of the taxes for that year; and that the Supreme Court decided that, under the act of 1877, the company had no right to recover from the city any sum for the water supply greater than the city taxes for that year.

3. That the company, in 1884, procured an act of the legislature, providing that the city should be required to pay the company the value of all the water it had supplied or should supply during any year for which taxes had been levied for municipal purposes; that unless the city should provide and appropriate a sum sufficient for this purpose the company should not be compelled to deliver water to it; that the taxes imposed should not be exacted until the city should have provided for the payment of the water supply for the same year; and that the city should be empowered to contract with the company, and determine upon the terms and conditions, and fix a price for obtaining from said company such supply of clear or filtered water.

4. That, acting under this statute, the city council, in September, 1884, passed an ordinance, No. 909, authorizing the mayor to enter into a contract with the company, and in pursuance thereof the mayor did enter into such contract, binding the city, during the whole of the remainder of the charter of the company, to pay it the sum of $60 for every fire-plug, fire-hydrant and fire-well connected with the mains or pipes of the company, " of which there are now 1139, and which number shall ever be the least measure of the annual sum to be paid said company," and to pay $60 each for every additional hydrant, etc. This contract was executed October 3, 1884.

5. That said ordinance, No. 909, and said contract were not authorized by the act of 1884; that the legislature did not

contemplate that the contract relations between the city and the company, as set forth in its charter and interpreted by the Supreme Court, should be in any manner changed, except for the purpose of enabling the company to furnish clear and filtered water to the city; that the only proper interpretation of said act was, that the city, before it demanded the taxes from the Water Works Company, should provide in its budget for the payment of the amount due to the company under its charter as interpreted by the Supreme Court, for the water furnished in that year by the company, and that the value of the water mentioned did not mean new value to be fixed by contract between the company and the city, but the value as fixed in the charter of the company, which was binding upon both parties; that, if the act did contemplate a new and different contract, stipulating what the value of the water was, it was unconstitutional, null and void, in that — First, it violated that provision of the state constitution which declares that, " The General Assembly shall not pass any local or special law creating corporations, or amending, renewing, extending or explaining the charter thereof." Second, that it violated Article 57, which declares that " The General Assembly shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liability or obligation of any corporation or individual to this State or to any parish or municipal corporation therein." Third, that it violated Article 234, which provides against remitting the forfeiture of the charter of any corporation, or renewing, altering or amending the same, or passing any general or special law for the benefit of said corporation, " except on the condition that said corporation shall thereafter hold its charter subject to the provisions of this constitution." Fourth, that it also violates Article 45, because it embraces more than one object.

6. That, in accordance with this unlawful contract, the city appropriated, for the year 1885, $68,340, to be paid to the Water Works Company for the water supply for that year, of which it had already been paid $39,875; that the petitioners presented a petition to the council protesting against this con-

tract, calling attention to its unconstitutionality and illegality, and asking the council to repudiate it; that the council neglected to take any action; and that they believe it did not intend to do so, but would continue to recognize the contract from year to year and make appropriations to pay it.

Wherefore they prayed an injunction against the city from making any appropriation under the contract, and that the contract of October 3, 1884, and ordinance No. 909, and the act of the legislature of 1884, be declared unconstitutional, null and void, and both parties be enjoined from setting up the contract as valid and binding. Exceptions were filed to this petition, which were sustained and the petition dismissed. An appeal was thereupon taken to the Supreme Court of the State. It does not appear clearly what became of this appeal, though the decree of the court below seems to have been reversed, as an answer was subsequently filed in the court of original jurisdiction, admitting most of the allegations of fact in the bill, but denying the construction put upon the contract, and denying that the price contracted to be paid by the city was unfair or exorbitant. Judgment was subsequently entered to the effect that the contract, the ordinance No. 909 of September 23, 1884, and the act of the legislature of 1884, were unconstitutional, null and void, and an injunction was issued according to the prayer of the bill. An appeal was taken to the Supreme Court of the State, upon the hearing of which the judgment of the lower court was reversed, and the bill dismissed and the injunction dissolved. 41 La. Ann. 910. Thereupon writs of error were sued out from this court, both by the city of New Orleans and by Conery and the other taxpayers. The record being filed, this motion was made to dismiss.

The cases were argued on the merits as well as on the motions.

*Mr. Carleton Hunt* for the plaintiffs in error, and in opposition to the motions.

*Mr. J. R. Beckwith, Mr. G. A. Breaux* and *Mr. F. P.*

*Poché* for the defendants in error, and in support of the motions. *Mr. H. H. Hall* was on their brief.

MR. JUSTICE BROWN, after stating the case, delivered the opinion of the court.

In order to sustain the jurisdiction of this court upon the ground that a Federal question is presented, it should appear either that such question was apparent in the record, and that a decision was made thereon, or that, from the facts stated, such question must have arisen, and been necessarily involved in the case. If it appear either that the decision of the state court was made upon rules of general jurisprudence, or that the case was disposed of upon other grounds, broad enough in themselves to sustain the judgment without considering the Federal question, and that such question was not necessarily involved, the jurisdiction of this court will not attach.

(1) Was there a Federal question involved in this case? None such appears upon the face of the bill, the basis of which is a conflict between the act of 1884, and the ordinance and contract thereunder and the constitution of the State. Four clauses of the constitution are cited, all of which this act is alleged to violate; but in none of them is there a suggestion of a conflict with the Federal constitution or laws. On May 27, 1887, the city of New Orleans filed a brief answer to the bill denying, all and singular, the allegations therein contained, etc., and praying judgment against the plaintiffs' demand. On November 3, 1888, without withdrawing its first answer, it filed an amended or supplemental answer, in which it assumed an entirely different position, averring that by the terms of the act of 1877 the city was entitled to its supply of water free of charge, "and that the guaranty of this law to the city, securing to it the benefits of free water, has not been and cannot be diminished without impairing the obligation of contracts, and thereby violating Article 1, section 10 of the Constitution of the United States;" and that the ordinance No. 909 was an attempt to frustrate and set at naught the terms of the act of 1877.

The second answer further proceeded to allege the illegality of the contract of October 3, 1884, also of the ordinance No. 909, which was charged to be in direct violation of the act of 1884; and that the decision of the Supreme Court gave a judicial construction to section 11 of the act of 1887, and determined the effect of the legislative contract between the city and the Water Works Company by virtue of the act of 1877, and declared that the latter, under said contract, had no power to demand or require from the city of New Orleans in any year any sum for the water supply, which it was bound under its charter to furnish to the city, greater than the amount of the city taxes for that year.

The answer, in its further averments, is a substantial iteration of the charges made in the bill, and sets forth that in case the courts should decide that the act of 1884 did authorize the city and the company to enter into a new contract, stipulating the value of the water to be supplied, the act itself was unconstitutional, in that it violated no less than six articles of the state constitution.

The District Court, in giving its reasons for judgment, held that, notwithstanding the act of 1884, the obligation of the company to furnish the water supply still subsisted, subject only to the qualifications that compensation equal in amount to the taxes exacted might be claimed; and that, in requiring the city to pay for all the water it received, (in the event of its demanding the tax,) and in providing specially that, unless it set apart a sufficient sum to make such payment, the company should not be compelled to deliver water as provided in its charter, the legislature was releasing or extinguishing an obligation which had been ascertained, and defined by the Supreme Court of the State, from the Water Company to the city of New Orleans, within the meaning of the State constitutional provision, Article 57, which provided that "the General Assembly shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liability or obligation of any corporation or individual to this State, or to any parish or municipal corporation therein." The court, therefore, sustained the prayer of

the bill and granted an injunction.　There was no reference in this opinion to any Federal question.

On appeal to the Supreme Court, the judgment of the District Court was reversed, the majority of the court holding that the decision of the court in the prior case annulling the exemption from taxation contained in section 11 of the act of 1877 did not regulate the contract between the parties for the future as to the price of the water to be furnished by the company, since that would be making a contract for the parties which they never intended, and which was not warranted by any promises in the water works charter; that there was no other section of the act imposing any obligation upon the company to furnish free water to the city for any franchise or privilege granted by the State, and that the city could not impose any obligation upon it contrary to the original grant, without its consent.　The court further held that there was no proof in the record of any fraud or undue advantage obtained by the Water Works Company over the city, and that, independent of any statutory provision subsequently enacted, authorizing the city to contract for its water supply, (alluding to the act of 1884,) it had full and plenary power to do so under the provisions of its charter.　The court also held that the act of 1884, and the ordinance and the contract made in pursuance of it, violated no provision of the state constitution and were valid.　No allusion was made in this opinion to any Federal question.

The Chief Justice, dissenting, was of the opinion that the judgment in the prior suit settled forever the question of the respective liability of both corporations, the one for the water supplied, the other for the taxes demandable ; that its effect was to close the door for all time to those litigants on the subject of such reciprocal liability, the one to the other; that the moment it was rendered it became the property of each party, who then acquired the right of using it as an effectual shield for protection against any further demand ; that it was designed to establish firmly for the future, during the term of the existence of the company, that in no case would it ever claim from the city for water supply any amount in excess of

that which the city would have the right to demand for taxes due her; that, while the city of New Orleans was a functionary created by the sovereign, it did not follow that the sovereign could divest it of its property, appropriate it to its own use, or give it away, or impair the obligation of contracts in its favor; and that it was incompetent for the legislature to deprive the city of its right of ownership to the judgment in its favor whereby it was to be relieved from all amount exceeding the taxes due it by the Water Works Company. This is the only opinion which contains any suggestion of a Federal question. There was another dissenting opinion, but the dissent was based solely upon the ground of a conflict between the act of 1884 and the state constitution, and upon the theory that the prior judgment operated by way of estoppel against any subsequent agitation of the questions therein decided.

While there is in the amended and supplemental answer of the city a formal averment that the ordinance No. 909 impaired the obligation of a contract arising out of the act of 1877, which entitled the city to a supply of water free of charge, the bare averment of a Federal question is not in all cases sufficient. It must not be wholly without foundation. There must be at least color of ground for such averment, otherwise a Federal question might be set up in almost any case, and the jurisdiction of this court invoked simply for the purpose of delay. Thus in *Millingar* v. *Hartupee*, 6 Wall. 258, it was held that to bring a case within that provision of the Judiciary Act, which declares that the final judgment of a state court may be reëxamined, where is drawn in question the validity of an authority exercised under the United States, there must be something more than a bare assertion of the exercise of such authority. In delivering the opinion of the court the Chief Justice observed: "The authority intended by the act is one having a real existence, derived from competent governmental power. If a different construction had been intended, Congress would doubtless have used fitting words. The act would have given jurisdiction in cases of decisions against claims of authority under the United States. In respect to the question we are now considering, 'authority'

stands upon the same footing with 'treaty' or 'statute.' If a right were claimed under a treaty or statute, and on looking into the record, it should appear that no such treaty or statute existed, or was in force, it would hardly be insisted' that this court could review the decision of a state court, that the right claimed did not exist." This language was used in connection with the first clause of section 709 of the Revised Statutes, "where is drawn in question the validity of a treaty or statute of, or an authority exercised under, the United States, and the decision is against their validity," but it is equally applicable to the next clause, which covers the case under consideration, "where is drawn in question the validity of a statute of, or an authority exercised under, any State, on the ground of their being repugnant to the Constitution, treaties, or laws of the United States, and the decision is in favor of their validity."

Applying the principle of this decision to the present case, we think that before we can be asked to determine whether a statute has impaired the obligation of a contract, it should appear that there was a legal contract subject to impairment, and some ground to believe that it has been impaired ; and that to constitute a violation of the provision against depriving any person of his property without due process of law, it should appear that such person has a property in the particular thing of which he is alleged to have been deprived.

(2) The contract relied upon in this case is that contained in section 11 of the act of 1877, which provided that the city should be allowed the free use of water for municipal purposes in consideration whereof the franchise and property of the Water Company should be exempted from taxation. There are several reasons, however, why the city cannot claim that this contract was impaired by subsequent legislation : first, because the contract itself, which was in reality between the State and the Water Works Company, was *ultra vires* and void, and was so declared by the Supreme Court of Louisiana in the case between the city and the Water Works Company, 36 La. Ann. 432 ; second, because the city repudiated its contract by bringing suit against the company for its taxes ; and

it does not now lie in the mouth of its counsel to claim that the obligation of such contract was impaired by subsequent legislation, when such legislation was rendered necessary by, or at least was the natural outgrowth of, its own repudiation of the contract; third, the city being a municipal corporation and the creature of the state legislature, does not stand in a position to claim the benefit of the constitutional provision in question, since its charter can be amended, changed or even abolished at the will of the legislature. In *The Dartmouth College Case*, 4 Wheat. 518, 660, 661, in which the inviolability of private charters was first asserted by this court, a distinction is taken, in the opinion of Mr. Justice Washington, between corporations for public government and those for private charity; and it is said that the first being for public advantage, are to be governed according to the law of the land; and that such a corporation may be controlled, and its constitution altered and amended by the government, in such manner as the public interest may require. " Such legislative interferences cannot be said to impair the contract by which the corporation was formed, because there is in reality but one party to it, the trustees or governors of the corporation being merely the trustees for the public, the *cestui que trust* of the foundation." Mr. Justice Story was also of opinion, page 694, that, " corporations for mere public government, such as towns, cities and counties, may in many respects be subject to legislative control."

In the case of *East Hartford* v. *Hartford Bridge Company*, 10 How. 511, 533, 534, the constitutionality of an act of the legislature discontinuing a ferry, the franchise of which for more than one hundred years had belonged to the town of Hartford, and subsequently to that of East Hartford, was drawn in question. It was claimed by the town that the State had impaired the obligation of its contract; but it was held that " the parties to this grant did not, by their charter, stand in the attitude toward each other of making a contract by it such as is contemplated in the Constitution, and as could not be modified by subsequent legislation. The legislature was acting here on the one part, and public municipal and political

corporations on the other. .. . . The grantees likewise, the towns being mere organizations for public purposes, were liable to have their public powers, rights and duties modified or abolished at any moment by the legislature. . . . Hence, generally, the doings between them and the legislature are in the nature of legislation rather than compact, and subject to all the legislative conditions just named, and, therefore, to be considered as not' violated by subsequent legislative changes."

So in *Laramie County* v. *Albany County*, 92 U. S. 307, 311, it was held that the legislature had power to diminish or enlarge the area of a county whenever the public convenience or necessity required. "Institutions of the kind," said Mr. Justice Clifford, "whether called counties or towns, are the auxiliaries of the State in the important business of municipal rule, and cannot have the least pretension to sustain their privileges or their existence upon anything like a contract between them and the legislature of the State, because there is not and cannot be any reciprocity of stipulation, and their objects and duties are utterly incompatible with everything of the nature of compact." So in the recent case of *Williamson* v. *New Jersey*, 130 U. S. 189, 199, it was held that the power of taxation on the part of a municipal corporation is not private property or a vested right of property in its hands; but the conferring of such power is an exercise by the legislature of a public and governmental power which cannot be imparted in perpetuity, and is always subject to revocation, modification and control, and is not the subject of contract. Said Mr. Justice Blatchford : "We are clearly of opinion that such a grant of the power of taxation, by the legislature of a State, does not form such a contract between the State and the township as is within the protection of the provision of the Constitution of the United States which forbids the passage by a State of a law impairing the obligation of contracts."

At the last term of this court, in the case of *Essex Public Road Board* v. *Skinkle*, 140 U. S. 334, it was held, the Chief Justice speaking for the court, that an executive agency created by a State for the purpose of improving public highways, and empowered to assess the cost of its improvements upon adjoin-

ing lands, and to purchase such lands as were delinquent in the payment of the assessment, did not by such purchase acquire a contract right in the land so bought, which the State could not modify without violating the provisions of the Constitution of the United States. But further citations of authorities upon this point are unnecessary; they are full and conclusive to the point that the municipality, being a mere agent of the State, stands in its governmental or public character in no contract relation with its sovereign, at whose pleasure its charter may be amended, changed or revoked, without the impairment of any constitutional obligation, while with respect to its private or proprietary rights and interests it may be entitled to the constitutional protection. In this case the city has no more right to claim an immunity for its contract with the Water Works Company, than it would have had if such contract had been made directly with the State. The State, having authorized such contract, might revoke or modify it at its pleasure.

Equally untenable is the claim that the Supreme Court of the State gave a construction to this act of 1877, which constitutes a contract between the Water Works Company and the city, which subsequent legislation could not impair. In construing section 11, the Supreme Court held that the exemption from taxation was invalid, and that the reconventional demand of the Water Works Company for the water supplied was sustainable only to the exact amount of taxes for the same year. This, however, was not the making of a new contract between the Water Works Company and the city, but the nullification of an old one, and a determination of the respective rights of the city and the company under that section of the act. Courts have no power to make new contracts or to impose new terms upon parties to contracts without their consent. Their powers are exhausted in fixing the rights of parties to contracts already existing. But conceding that the decision of the Supreme Court amounted simply to an interpretation of an existing contract, by which the company agreed to furnish the city with water in consideration of the amount of its taxes, yet the contract was, for the reasons already

stated, so far as the city was concerned, subject to the will of the legislature. As was justly remarked in the concurring opinion of Mr. Justice Poché in this case : " It surely cannot be seriously urged that the legislature is stripped of its power to authorize a contract to have effect in the future by judicial interpretation of a contract, and which at the time had reference to the present and to the past only. A very large proportion of the legislation in all the States is prompted by the decisions of the courts, and is intended to remedy some mischief pointed out by or resulting from the utterances of the courts of the country."

Our conclusion upon this branch of the case, therefore, is, that there was no contract between the city and the Water Works Company which was protected by the constitutional provision in question.

(3) Has the city been deprived of its property without due process of law ? It certainly has not been deprived of its property in the judgment of the Supreme Court in its favor for the taxes, since the judgment was paid and satisfied. The only property it is assumed to have, then, arises from the interpretation put by the Supreme Court upon the act of 1877, which, it is argued, created an indefeasible right on the part of the city to set off its taxes against the claim of the Water Works Company for water, of which it could not be deprived. But such interpretation determined only the respective rights of the parties as they then existed, and, for the reasons already stated, such rights, at least so far as the city is concerned, were subject to change at the will of the legislature. Indeed, under the act of 1884 and ordinance No. 909, the right of the city to its taxes remains unimpaired ; the only change made is in the creation of a new basis of liability of the city in respect to its water supply for municipal purposes. The only property of which it was deprived was the right it had possessed under the act of 1877 of paying for its water supply in taxes ; but, if this were property at all, even within the liberal definition of that word given by Mr. Justice Bradley, in *Campbell* v. *Holt*, 115 U. S. 620, 630, it was not such a vested right as was beyond the control of the legislature. An adjudication of the

rights of two private parties to a contract, with respect to the terms of such contract, does not prevent their agreeing upon other and different terms for the future. The fact that such parties are a private and a public corporation is immaterial, so long as the right to contract exists.

(4) Little need be said with regard to the appeal of Conery and the other taxpayers; they sue in the right of the city, the rights of the city are their rights, and they have no other or greater rights upon this appeal than has the city. Indeed, the city has, in its amended and supplemental answer, joined with them in the assertion of its rights, and they are bound by the disposition of the case against it. As there is no Federal question properly presented in this case,

*The motion to dismiss is granted.*

Mr. Justice Harlan is of opinion that this court has jurisdiction, and that the judgment below should be affirmed.