## TONOPAH SEWER & DRAINAGE CO. *v.* NYE COUNTY

No. 2736

April 7, 1927.                                        254 P. 696.

1. PUBLIC SERVICE COMMISSIONS—COMMISSION MAY CHANGE FRANCHISE RATES FOR COUNTY BUILDINGS.

Public service commission has jurisdiction and authority to fix and authorize sewer rates for county buildings, notwithstanding franchise contract between county commissioners and sewer company, providing for free service, and provision in act creating public service commission that it should not affect existing contracts, where franchise contract was altered to allow change in rates when it was ratified.

2. MUNICIPAL CORPORATIONS—STATE MAY MODIFY OR SET ASIDE ACTS OF MUNICIPALITY WITHOUT CONSENT.

State may enlarge, modify, diminish, or set aside acts of municipality, or one of its political subdivisions, without their consent.

3. COUNTIES—STATE IN RATIFYING FRANCHISE CONTRACT BETWEEN COUNTY AND SEWER COMPANY MAY MAKE CHANGES THEREIN.

In ratifying franchise contract between sewer company and county commissioners, state had power to make important changes therein.

4. PUBLIC SERVICE COMMISSIONS—RATES ARE NOT SUSPENDED PENDING REHEARING.

Filing and granting of petition for rehearing as to sewer rates fixed by public service commission did not have effect of suspending operation of rates theretofore established by commission's order, in view of public service commission act 1919 (Stats. 1919, c. 109), secs. 32, 33, since direct and specific order would be necessary to cause such suspension.

5. PUBLIC SERVICE COMMISSIONS—REASONABLENESS OF SEWER RATES FOR COUNTY BUILDINGS WILL NOT BE CONSIDERED IN SEWER COMPANY'S ACTION TO RECOVER AMOUNT DUE.

In action by sewer company against county to recover sum claimed for sewer service furnished, whether rates fixed by commission were exorbitant and unreasonable is collateral question and will not be considered.

C. J.–CYC. REFERENCES

COUNTIES—15 C. J. sec. 53, p. 421, n. 15.
DRAINS—19 C. J. sec. 37, p. 627, n. 52 (new).
MUNICIPAL CORPORATIONS—28 Cyc. p. 283, n. 2.

APPEAL from Fifth Judicial District Court, Nye County; *J. Emmett Walsh,* Judge.

Action by the Tonopah Sewer & Drainage Company against Nye County. Judgment for plaintiff, and defendant appeals. **Affirmed.**

*Joseph T. Murphy,* District Attorney, for Appellant:

Whether law is valid as exercise of police power, or void as impairing obligation of contract, depends upon nature of contract and power of government to make it. Difference between two classes of cases is that which results from want of authority to barter away police power, and undoubted right of government to enter into binding contract. If contract is valid and innocuous, police power cannot be invoked. Grand Trunk v. South Bend, 57 L. Ed. 633.

Reputable cases hold charter rate agreements binding and irrevocable, even under acts which do not withhold power from commission to change. City of Cincinnati v. Utility Commission, P. U. R. 1919, c. 119; 6 R. C. L. 342; 12 C. J. 1009; 194 U. S. 534.

It is argued that by act of ratification, power was given commission to change rates. This is true, but no power was given to change conditions of franchise, nor to create rate expressly left out. There was no rate, hence none could be changed. Stats. 1911, c. 44, ratified contract but expressly withheld power over prior contract. No law impairing obligation of contract shall ever be passed. Nev. Const. art. I, sec, 15; U. S. Const. art. I, sec. 10.

Public service commission is creature of statute with limited jurisdiction. 3 Rev. Laws, p. 3154. Its powers can be exercised only in mode prescribed, and cannot be enlarged. Umbarger v. Chaboya, 49 Cal. 525. It cannot interfere with contracts existing at time of its creation. 3 Rev. Laws, p. 3159, sec. 15. At that time there was existing contract between water company and Tonopah and Nye County, later ratified by legislature. Stats. 1911, c. 44. No change was asked until 1922. Intention, shown by long continued acquiescence, governs courts in interpretation. Van Doren v. Tjader, 1 Nev. 380; 9 Cyc. 577, 588.

Action was premature. Plaintiff must show he has exhausted his remedy with commission. Stats. 1919, c. 109, sec. 33; City of Superior v. Duluth Ry. Co., 142 NW. 184.

Neither by constitutional provision nor legislative act can state impair existing contract. Gunn v. Barry, 21 L. Ed. 212; P. U. R. 1919D, 239.

Where city, acting through its authority, has contracted for public utility service, its contract is binding and may not be repudiated even though performance results in loss. Parties, including municipalities, must be left free to make lawful contracts, and it is duty of courts to enforce them. Logansport Gas Co. v. Peru, 89 Fed. 185; Pond, Public Utilities, secs. 431–432; Moorehead v. Union Light, etc. Co., 255 Fed. 920.

*Thatcher & Woodburn,* for Respondent:

Whether rates are unreasonable is not before court. When no bill of exceptions is taken presumption is that decision and findings are supported by evidence. Young v. Holman, 47 Nev. 4. This action is for collection of rentals pursuant to rates established by commission in its order. Decision upon that question was committed by legislature to commission. The utility company is entitled to initiate its rate. Stats. 1919, 203–204, sec. 14. Schedule may be suspended until hearing for certain periods, but when fixed is in force until modified by commission. Secs. 32–33.

Section 33 provides for court proceedings to set aside order of commission. No injunction shall issue suspending order except upon notice to commission. Provision as to time for commencing action is mandatory. Atlantic City v. Commission, 125 Atl. 479; P. U. R. 1926A, 103.

Rates established by order of commission, January 23, 1922, are lawful and there can be no collateral inquiry in this proceeding as to whether they are reasonable. Question is foreclosed and can be opened only by application to commission to change. Springfield, etc. Co. v. Philadelphia, 131 Atl. 716; Suburban W. Co. v. Oakmont Burrough, 110 Atl. 778.

Legislature did not give unqualified approval to contract of 1906, but declared rates subject to regulation. Stats. 1911, 43. There is provision giving Tonopah right to connect its public buildings free of charge, but buildings here in controversy belong to Nye County. There is clear distinction. Ely Water Co. v. White Pine Co., 38 Nev. 472.

Regulation of utility rates does not violate obligation of contract. 248 U. S. 372; 141 P. 620; 204 SW. 1074; 59 L. Ed. 1254.

Public utility contracts are subject to police power. Transbarger v. C. & A. R. R., 156 SW. 694. Their regulation is legislative function. Police power should not be bartered away. New Orleans, etc. Co. v. Louisiana, etc. Co., 29 L. Ed. 516.

Provisions for free service are not favored, because they place unjust burdens on rate-payer which should fall on whole community. Charleston v. Commission, 103 SE. 673; L. R. A. 1918D, 907.

## OPINION

By the Court, ORR, District Judge:

The Tonopah Sewer Company, plaintiff in the court below, brought this action against Nye County to recover the sum of $832. Said sum being claimed for sewer service furnished certain departments or buildings of Nye County, to wit, Nye County courthouse, Nye

County hospital, and Nye County public library. The lower court entered judgment in favor of the sewer company, and from said judgment Nye County has prosecuted this appeal.

1.  It is the contention of appellant that it is not liable for sewage service furnished said public buildings because of an exemption from such payment, contained in a certain franchise contract entered into by the county commissioners of Nye County and one F. S. Lack, predecessor in interest of the sewer company. The franchise contract was entered into May 1, 1905, and was ratified by the legislature of the State of Nevada in the year 1911.

In the franchise contract as entered into by the county commissioners and Lack and as later ratified by the legislature, there appears in the schedule of rates fixed this provision: "Schoolhouses and public buildings, free use given." On January 23, 1922, the public service commission of the State of Nevada, pursuant to proceedings duly and regularly had, fixed a rate of $84 for the Nye County courthouse, $20 for the Nye County hospital, and $5 for the Nye County public library. The important question in this case is: Did the public service commission have jurisdiction and authority to fix and authorize such rates in view of the contract theretofore mentioned? It is our opinion that it had.

2.  There is no longer any question but that a state may enlarge, modify, diminish, or set aside the acts of a municipality or one of its political subdivisions, without their consent. This is based upon the theory that the state is supreme and the action of the state in so doing is binding upon the municipality or political subdivision. Pawhuska v. Pawhuska Oil & Gas Co., 250 U. S. 394, 39 S. Ct. 526, 63 L. Ed. 1054; City of Trenton v. State of New Jersey, 362 U. S. 182, 43 S. Ct. 534, 67 L. Ed. 937, 29 A. L. R. 1471; City of Salem v. Salem Water, Light & Power Co. (C. C. A.) 255 F. 295; Laramie County v. Albany County, 92 U. S. 307, 23 L. Ed. 552; Hunter v. City of Pittsburgh, 207 U. S. 161, 28 S. Ct. 40, 52 L. Ed. 151; City of Sapulpa v. Oklahoma Natural Gas Co., 258 U. S. 608, 42 S. Ct. 316, 66 L. Ed.

788.   The state may exercise this right through its duly constituted commission, by delegating the authority to it.   A number of recent cases hold that the commission in the exercise of this authority may annul a provision in a franchise contract providing for free service to be performed by a public utility.   Winfield v. Public Service Commission of Indiana, 187 Ind. 53, 118 NE. 531; City of Hillsboro v. Public Service of Oregon, 97 Or. 320, 187 P. 617, 192 P. 390; Springfield Consolidated Water Co. v. City of Philadelphia, 285 Pa. 172, 131 A. 716; New Orleans v. New Orleans Water Works, 142 U. S. 79, 12 S. Ct. 142, 35 L. Ed. 943; Western Oklahoma Gas & Fuel Co. v. City of Duncan (Okl. Sup.), 251 Pa. 37.

If the State of Nevada had unqualifiedly delegated to its public service commission the right to control and regulate rates, we might stop here.   However, we find in the legislative acts of 1911 (Stats. 1911, c. 162) and 1919 (Stats. 1919, c. 109) this provision:

"This [speaking of power delegated to commission] * * * shall not have the effect of suspending, rescinding, invalidating, or in any way affecting contracts existing on March 23, 1911."

The franchise contract, as ratified, was in existence at the time of the creation of the public service commission.   Now the inquiry is: Does the changing of the rate relative to the said Nye County public buildings violate the said franchise contract as ratified?

3.   It is clear that the fixing of a charge for sewer service rendered said public buildings would be contrary to the terms of the original contract as entered into by the county commissioners and F. S. Lack, but in ratifying the contract the state saw fit to make important changes therein.   Under the well-established law, the state possessed the power to do this.   See authorities hereinbefore cited.   The contract as entered into by the county commissioners and F. S. Lack in 1905 became merged in the contract as ratified by the legislature in 1911, and it is with the ratified contract we are compelled to deal.   In ratifying the 1905 contract, the state reserved to its duly constituted public service commission

or similar body the right to change any of the rates fixed in the schedule found in said ratified contract. It then follows that the public service commission, in establishing the rate on the public buildings in question here, acted not only in accordance with the power vested under the acts creating it, but in accordance with the contract itself. Under the power reserved to the commission by the ratified contract, there can be no question that the commission had jurisdiction to change the rates for private buildings, and the very same right in the very same terms exists as to the public buildings enumerated.

There is a provision in the ratified contract, not a part of the schedule of rates, which purports to give free sewer service to the buildings belonging to the town of Tonopah. With that provision we have no concern, as the buildings in question here do not belong to the town of Tonopah, but to Nye County. The contention that the public service commission was without authority to fix the rate for service furnished the public buildings in question is without merit.

It is urged that the bringing of this suit was premature, because the order of the commission fixing the rate had not become final and that said rates had been suspended. This contention is based on the fact that the commission, after having ordered the rates put into effect, had granted a rehearing. The sewer company sought to initiate a new schedule of rates. It gave the required notice and made the required posting. Before the date set for the new schedule, as proposed by the sewer company, was to become effective, the public service commission suspended them in order to permit a hearing thereon. A hearing was had and an order issued by the commission retaining in effect the old schedule, that is, the schedule in effect before the sewer company attempted to make the change, with the exception that authorization was given the sewer company to make the charges for service rendered the public buildings hereinbefore enumerated. This order of the commission was made effective January 23, 1922. Subsequent to the making and putting in effect of the rates

the respective parties petitioned for a rehearing which was granted. A rehearing, however, was never had.

4. We do not believe, in view of section 32 of the public service commission act. (Statutes 1919, c. 109), that the filing of a petition for a rehearing and the order granting same had the effect of suspending the operation of the rates theretofore established by the order of January 23, 1922. To cause such a suspension would require a direct and specific order of the commission. Section 32 provides that the rates fixed by the commission are in force until set aside, changed or modified by the commission, or by a court pursuant to section 33. No such order was made either by the commission or by a court. The rates became effective pursuant to an order of the commission. For a suspension to have taken place more must have occurred than the filing of the petition for rehearing and an order granting it. Some express order of suspension was necessary, and we find no provision for it in the order of the commission granting a rehearing, nor is there evidence of such intention on the part of the commission in any of the proceedings before us.

5. It is also urged that the rates fixed by the commission are exorbitant and unreasonable. That question is collateral to the inquiry before us. The law provides the course to be pursued in the event a party is dissatisfied with the findings of the commission. It is no part of this proceeding, and we cannot entertain it.

The judgment is affirmed.

NOTE—SANDERS, C. J., being disqualified from sitting in this case, the Governor designated HON. WILLIAM E. ORR, District Judge, to act in his stead.