

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-1-1999

# Torres v. Metropolitan Life

Precedential or Non-Precedential:

Docket 97-5709

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Torres v. Metropolitan Life" (1999). *1999 Decisions.* Paper 188.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/188

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

(Corrected Dissenting Opinion)

Filed June 24, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-5709

EDWARD D. TORRES,
      Appellant

v.

METROPOLITAN LIFE INSURANCE COMPANY

On Motion for Award of Attorney Fees and Expenses
(District of New Jersey Civil Action No. 96-cv-01401)
(Honorable Stephen M. Orlofsky)

Argued January 28, 1999

Before: BECKER, Chief Judge, SCIRICA
and ROSENN, Circuit Judges

(Filed: June 24, 1999)

       CARL OXHOLM, III, ESQUIRE
        (ARGUED)
       JERRY L. TANENBAUM, ESQUIRE
       Connolly, Epstein, Chicco, Foxman,
        Engelmyer & Ewing
       1515 Market Street, Suite 900
       Philadelphia, Pennsylvania 19102

        Attorneys for Appellant

          B. JOHN PENDLETON, JR.,
           ESQUIRE (ARGUED)
          McCarter & English
          Four Gateway Center
          100 Mulberry Street
          Newark, New Jersey 07101-0652

           Attorney for Appellee

OPINION OF THE COURT

SCIRICA, Circuit Judge.

This is a motion for an award of attorney's fees and
expenses arising from the settlement of an employment
discrimination lawsuit by Edward D. Torres against
Metropolitan Life Insurance Company ("MetLife"). For the
reasons that follow, we will grant Torres's motion but refer
the matter to a Magistrate Judge for determination of the
appropriate amount of fees.

I.

In March 1996, Edward Torres commenced a pro se
employment discrimination suit against MetLife under Title
VII of the Civil Rights Act of 1964, 42 U.S.C.A. S 2000e to
2000e-17 (West Supp. 1999). Torres alleged that MetLife
unlawfully discriminated against him because he is
Hispanic and terminated his participation in MetLife's Pre-
Appointment Training Program in retaliation for reporting
the discrimination to several MetLife officers. The District
Court granted Torres's motion to proceed in forma pauperis.
In September 1997, MetLife filed a motion for summary
judgment, which the District Court granted on the basis
that Torres lacked standing to sue under Title VII because
he was not an "employee" of MetLife while enrolled in the
training program.

Torres filed a notice of appeal and moved for appointment
of counsel. On March 17, 1998, a motions panel of this
Court granted Torres's motion and appointed attorneys Carl
Oxholm III and Jerry L. Tanenbaum, both of the lawfirm

2

Connolly, Epstein, Chicco, Foxman Oxholm and Ewing ("Connolly Epstein"), as co-counsel to Torres. In an engagement letter signed by Torres and his new attorneys, Torres agreed that Connolly Epstein would represent him pro bono publico but assigned to Connolly Epstein all right and title to any legal fees that a court might require MetLife to pay.

Subsequently, Connolly Epstein prepared Torres's appeal while attempting to negotiate a settlement with MetLife. On July 16, 1998, the parties orally agreed to settle their dispute and MetLife's attorneys began drafting a settlement agreement. Shortly thereafter Torres and MetLife executed an Agreement and Release in which MetLife agreed to pay Torres $45,000 in settlement of all claims. The settlement agreement does not contain any reference to attorney's fees. The parties also executed a Stipulation of Dismissal with Prejudice of the Pending Lawsuit and filed it with this Court.

Torres now moves for an order requiring MetLife to pay Connolly Epstein attorney's fees and expenses in the amount of $30,427.14, representing the work done by Connolly Epstein in preparing Torres's appeal and negotiating and executing the settlement, as well as the cost of preparing this motion.[1] By order of this Court, Torres's motion was referred to this merits panel for disposition.[2]

II.

A prevailing party is entitled to recover its reasonable attorney's fees unless special circumstances would render such an award unjust. See 42 U.S.C.A. S 2000e-5(k) (West Supp. 1999) (providing for recovery of fees in Title VII employment discrimination lawsuits); Independent Fed'n of Flight Attendants v. Zipes, 491 U.S. 754, 761 (1989);

_____

1. Initially, MetLife filed a cross-motion seeking attorney's fees and Rule
11 sanctions against Torres, but MetLife subsequently withdrew the cross-motion.

2. The District Court had subject matter jurisdiction under 28 U.S.C.
S 1331. We have jurisdiction under 28 U.S.C.S 1291.

Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402 (1968). A "prevailing party" is one that "succeed[ed] on any significant issue in the litigation which achieves some of the benefit the parties sought in bringing the suit." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (citation omitted). MetLife does not dispute that Torres qualifies as a prevailing party. Instead, MetLife argues Torres's motion must be denied because the settlement agreement was a "global agreement" extinguishing all of Torres's claims against MetLife, including a claim for attorney's fees. In support, MetLife offers extrinsic evidence of the parties' intent, including statements from Mr. Tanenbaum (who has since left Connolly Epstein) that he believed the agreement settled all of his client's claims against MetLife, including a potential claim for attorney's fees.

When the parties to a settlement agreement dispute whether the prevailing party waived its statutory right to attorney's fees, "the burden is on the losing party to show that the settlement agreement clearly waived" such right. El Club Del Barrio, Inc. v. United Community Corps., 735 F.2d 98, 99 (3d Cir. 1984). In El Club Del Barrio, which similarly involved a claim for recovery of attorney's fees in a Title VII suit, we expressly rejected a "silence equals waiver" rule and held that "extrinsic evidence such as the course of negotiations" is irrelevant. Id. at 100. A suit for recovery of attorney's fees is foreclosed only upon express stipulation in the settlement agreement: "If the parties cannot agree on counsel fees and the losing party wishes to foreclose a suit . . . for attorneys fees, it must insist that a stipulation to that effect be placed in the settlement agreement. We so hold." Id. at 101.

The settlement agreement here contains no such stipulation. In fact, it does not mention attorney's fees at all. MetLife cites the section of the agreement entitled "Plaintiff's Release And Waiver of Claims," which states in part:

> Without limitation, Plaintiff specifically releases all claims, charges, or demands asserted or assertable in the Pending Lawsuit, and all claims, charges, or demands arising from or relating to Plaintiff 's relationship of any kind with the Released Parties,

4

> including without limitation any rights or claims
> Plaintiff may have under Title VII of the Civil Rights Act
> of 1964, as amended, and the Civil Rights Act of 1991.

This language, although broad, does not expressly stipulate that Torres's claim for attorney's fees is waived. [3] As El Club Del Barrio makes clear, that is the end of the analysis. It is irrelevant whether Mr. Tanenbaum and the other attorneys believed the release extinguished a claim for fees, as MetLife contends. A settlement agreement that is silent as to attorney's fees will not be deemed to constitute a waiver, regardless of the course of negotiations. See El Club Del Barrio, 735 F.2d at 100; Ashley v. Atlantic Richfield Co., 794 F.2d 128, 139 (3d Cir. 1986) ("[W]here a defendant seeks to settle its total liability on a claim, it shall be incumbent upon the defendant to secure an express waiver of attorney's fees. Silence will not suffice.") (citation omitted). To hold otherwise would be to embrace the "silence equals waiver" rule that we have repeatedly rejected since El Club Del Barrio. If the parties to a settlement agreement wish to extinguish the prevailing party's claim for attorney's fees, they must do so specifically and expressly in the terms of the agreement. Because the parties here did not do so, Torres's claim for attorney's fees was not waived.

MetLife relies on Conrad v. Bergen Community College, 1996 WL 903946 (D.N.J. Dec. 12, 1996), in which the District Court denied the plaintiff 's request for attorney's fees even though the settlement agreement contained no express waiver. The District Court in Conrad based its ruling on the fact that during negotiations, plaintiff 's counsel gave "the impression" that fees would not be requested and defense counsel therefore formed a reasonable expectation that all attorney's fees were

_____

3. The dissent argues the release "expressly extinguish[ed] all claims to attorney fees" and that the agreement "could not be made more plain." We disagree. As we stated in El Club Del Barrio, the release must "clearly" waive plaintiff's right to attorney's fees. 735 F.2d at 99. The agreement here contains a general release that does not mention attorney's fees. It could easily have been "made more plain" through a specific provision unambiguously stating whether Torres's claim for attorney's fees was reserved.

encompassed within the agreement, regardless of the absence of an express waiver. Id. at *4. To the extent that Conrad would authorize a court to consider extrinsic evidence of the course of negotiations or the expectations of the parties, we believe it was wrongly decided. The clear import of El Club Del Barrio and Ashley is that it does not matter whether the parties discussed the issue of attorney's fees or believed the settlement agreement waived such a claim. All that matters is whether the agreement expressly stipulates that the prevailing party's claim for fees is waived. If it does not, then the claim survives.4

Similarly, we believe the dissent's reliance on Wakefield v. Mathews, 852 F.2d 482 (9th Cir. 1988) is misplaced. In Wakefield, the release was not silent as to attorney's fees, but expressly included "costs or expenses of any nature whatsoever." Id. at 483. For precisely this reason, the Wakefield court understood its decision to be fully consistent with El Club Del Barrio and Ashley. See id. at 484 ("We are in full agreement with the Third Circuit's resolution of both the El Club Del Barrio and Ashley cases. Waiver of attorney's fees should not be presumed from a silent record.").

The rule that claims for attorney's fees survive unless expressly waived is strongly grounded in policy considerations. As we observed in El Club Del Barrio, "Requiring the district court to inquire into the circumstances of settlement negotiations and to determine who said what to whom when seems a pointless exercise where observance of a formality will suffice." 735 F.2d at 100-01. We continue to believe that consideration of extrinsic evidence in these circumstances "unnecessarily complicates litigation" and that adherence to a clear rule of law is preferable. Id. at 100. A bright-line rule serves the additional virtue of promoting informed settlements, as the parties will know in advance whether their agreement truly forecloses a post-settlement petition for fees. See Ashley, 794 F.2d at 138.5 Also, such a rule is consistent with the

_____

4. We express no opinion on whether a court may look beyond the four corners of the settlement agreement in evaluating a claim or defense based on fraud, duress, accident, or mistake.

5. The rule we apply today will not leave "settlements and releases under the Act in chaos, stripped of any finality," as the dissent contends. On

6

Supreme Court's determination that prevailing civil-rights plaintiffs are presumptively entitled to recover attorney's fees. See El Club Del Barrio, 735 F.2d at 100 (rejecting a "silence equals waiver" rule because it "pays inadequate attention to the presumption established in Hensley and Piggie Park in favor of prevailing civil rights plaintiffs").

Consequently, we reiterate the holding of El Club Del Barrio and Ashley. If parties wish to extinguish a claim for attorney's fees, they must do so specifically and expressly within the terms of the settlement agreement. Accordingly, we will grant Torres's motion.

III.

The parties also dispute the reasonableness of the amount of fees requested. On this issue, we believe fact-finding is required. We will therefore refer the matter to a Magistrate Judge for a report and recommendation on the appropriate amount of fees.

_____

the contrary, we believe such an outcome could result from the dissent's invitation to consider whether the parties "viewed the waiver as inclusive of attorney's fees," thus raising questions of the parties' intent and the course of negotiations. A bright-line rule directing parties to insert specific provisions covering attorney's fees will clarify settlement agreements and promote finality.

ROSENN, Circuit Judge, dissenting:

I believe that the polestars to be followed in the construction of an agreement and release are the contractual language and the parties' intentions. Highly trained and experienced lawyers for the parties negotiated the settlement between Torres and the Metropolitan Life Insurance Company (MetLife or the Company) and later reduced it to writing. The written agreement and release plainly and unreservedly includes within its terms a settlement expressly extinguishing all claims to attorney fees to which the plaintiff might be entitled under Title VII of the Civil Rights Act of 1964, 42 U.S.C. S 2000e (the Act). I therefore respectfully dissent and would deny the plaintiff's motion for counsel's fees.

I.

Following his termination by MetLife of his participation in its Pre-appointment Training Program,1 Torres filed a pro se employment discrimination suit against the company under Title VII. The district court entered summary judgment for the Company on the ground that Torres lacked standing to sue under Title VII because his enrollment under the Training Program did not render him an employee. He appealed to this court.

On Torres's motion, we appointed two lawyers, Carl O. Oxholm, III, and Jerry L. Tanenbaum, co-members of the law firm of Connolly, Epstein, Chicco, Foxman, Oxholm and Ewing (Connolly Epstein), to represent him. His newly appointed lawyers sent Torres an engagement letter dated March 23, 1998, in which they set forth that they would represent him pro bono publico but that he would assign to Connolly Epstein all right to any legal fees that any court or other tribunal might require MetLife to pay.

_____

1. The program was designed to enable individuals interested in personal insurance to investigate employment opportunities in the insurance field. The program stated that participants were not employees of MetLife and required participants to maintain any other employment they presently had. Torres continued his employment with the Internal Revenue Service. MetLife released Torres from the program after four weeks.

8

Except in special situations not here relevant, American courts, unlike English tribunals, do not award attorney fees to a prevailing party except where there is a statutory mandate for such payment. See Hensley v. Eckerhart, 461 U.S. 424, 443-44 n.2 (Brennan, J., concurring in part and dissenting in part). In Title VII cases, there is such a mandate, and Torres and his counsel relied on it. Title VII provides that "the Court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. SS 1988 and 2000e-5(k). Torres filed his suit for discrimination in the United States District Court under Title VII, and the motion by his counsel before us now for attorney fees specifically recites that they claim attorney fees pursuant to Title VII for services incurred in the appeal and in the preparation of their motion.

In July 1998, while Torres's appeal was pending, the parties settled the case for $45,000. In a formal settlement agreement and release, Torres specifically agreed,"without limitation," to release

> all claims, charges, or demands asserted or assertable in the Pending Lawsuit . . . , including, without limitation, any rights or claims Plaintiff may have under Title VII of the Civil Rights Act of 1964, as amended, and the Civil Rights Act of 1991. Plaintiff agrees not to file or assert any claim, suit, or demand against any of the Released Parties that has been waived or released in this agreement.

(Emphasis added). Thus, in exchange for $45,000, Torres agreed to globally release MetLife of any and all claims that he had under Title VII. His attorney fees claim and the claim of his counsel to whom he assigned his right to attorney fees is under Title VII.

The settlement agreement and release specifically and expressly includes within its terms "any rights or claims Plaintiff may have had under Title VII of the Civil Rights Act of 1964" and the Civil Rights Act of 1991. There is nothing in this record to show that there was any dispute as to the plaintiff's right to attorney fees or the amount to be paid. There is no claim that there was ever any disagreement between the parties as to whether any rights or claims were

9

to be reserved or would otherwise survive the settlement agreement's sweeping release.

There is no reservation in the settlement agreement and, as far as the record shows, no demand by Connolly Epstein before the execution of the agreement and stipulation of dismissal of the pending lawsuit that MetLife separately pay it any costs or attorney fees in addition to the sum specified in the release. Connolly Epstein did not reserve or attempt to reserve any rights or claims for costs or attorney fees in the settlement agreement and release. Upon the execution of the settlement agreement, Connolly Epstein and MetLife executed a stipulation for dismissal with prejudice of the pending lawsuit and filed it with this court, which dismissed the case pursuant to the stipulation.

There can be no question that Connolly Epstein knew that the sole basis for any claim for attorney fees by them or Torres was predicated solely upon Title VII of the Act. Although Tanenbaum, who performed most of the services for Torres's appeal, is no longer with Connolly Epstein, it was unequivocally clear to him and his co-counsel, Oxholm, without any reference by the court to extrinsic evidence proffered by MetLife, that the plaintiff fully and unambiguously released in his settlement agreement whatever rights or claims he had under Title VII. Similarly, it should be clear to the court from the written agreement that Torres released all rights or claims under the Act. Oxholm, in his affidavit in support of the motion for attorney fees, represents that he not only graduated from Harvard Law School cum laude, but that his "extensive activities on behalf of pro bono legal services" have earned for him various honors, including the Pro Bono Publico Award of the American Bar Association. He also claims "extensive experience in the preparation, trial and management of significant business litigation including the civil rights cases in this Court." Furthermore, Oxholm also asserts in his affidavit that since he left the City Solicitor's Office in 1989 to join Connolly Epstein, he was "the only attorney representing the City [Philadelphia] and all of its officials in the three dozen civil rights cases arising out of the City's confrontation with MOVE (In re City of Philadelphia Litigation)."

10

Oxholm also avers that he sought the assistance of his partner, William H. Ewing, who had graduated first in his class at the University of Pennsylvania Law School, in developing the legal arguments made on behalf of Torres and that Ewing also serves as co-chair of the Connolly Epstein Employment Law Department. Tanenbaum is a 1992 summa cum laude graduate of Temple University Law School, where he ranked first in his class and was editor-in-chief of the Temple Law Review. There can be no misunderstanding on the part of these experienced and highly trained lawyers that a release "without limitation [of] any rights or claims plaintiff may have under Title VII of the Civil Rights Act of 1964, as amended," did not reserve any right to attorney fees under the Act.

The motion for legal fees by Connolly Epstein not only represents that attorneys Oxholm and Tanenbaum performed services in behalf of Torres in connection with the appeal and settlement, but that a considerable time was spent in reviewing the Title VII statute, its definitions and research in connection therewith. Tanenbaum spent time in settlement discussions with his client, with the Company, and Oxholm and Tanenbaum conferred with respect to "settlement strategy." It is inconceivable and incomprehensible that they did not know, especially considering their expertise in employment law and in Title VII cases, that the comprehensive and global language of the release they executed did not reserve the right to collect attorney fees claimed under Title VII. Disingenuously, after the settlement check of $45,000 cleared the bank, Deborah Weinstein, in behalf of Connolly Epstein, wrote MetLife counsel on August 17, 1998, requesting that MetLife pay them an additional $22,174.14 in counsel fees and expenses.

Torres signed the settlement agreement with benefit of these attorneys who are experts in employment law, specifically with respect to Title VII cases. They advised him, agreed to the broad language of the release, and filed the Stipulation of Settlement dismissing the action with prejudice. Of course, they knew that the language of the release included all matters, and did not reserve any claim for attorney fees and expenses.

In their claim for attorney fees and expenses, Connolly Epstein maintains that Torres is entitled to additional reasonable attorney fees and expenses for the appeal of this case because he is the prevailing party pursuant to Title VII, 42 U.S.C. SS 1988 and 2000e-5(k). It boldly asserts that "the settlement documents do not release MetLife from Torres's entitlement to recover attorney fees and expenses." In support of the motion, it argues that Torres has not settled his claim for attorney fees and expenses because a waiver of the statutory right to attorney fees and expenses "must be expressly set forth in the settlement documents." The agreement and release, however, expressly includes an extinguishment of all rights and claims under the Act; it clearly includes the right to any attorney fees and expenses claimed under the Act. It could not be made more plain than the settlement language releasing without limitation "any rights or claims plaintiff may have under Title VII of the Civil Rights Act as amended."

In support of its motion, Connolly Epstein cites to El Club del Barrio, Inc. v. United Community Corporations, 735 F.2d 98 (3d Cir. 1984), and Ashley v. Atlantic Richfield Company, 794 F.2d 128 (3d Cir. 1986). Those cases, however, are inapposite and distinguishable. Both of them concern situations where the parties could not agree on counsel fees, attempted to reserve the issue of attorney fees, and therefore omitted any reference to them in their agreement. In both El Club del Barrio and Ashley , the original settlement agreements proposed to the plaintiffs in the course of the negotiations for settlement included language referring to attorney fees. This language, however, was subsequently deleted upon the objection of the opposing party.

In both of the above cases, this court was asked to determine whether silence in a revised settlement agreement under such circumstances constituted a waiver of rights to attorney fees under Title VII when an express reservation of rights clause had been negotiated out of the initial settlement drafts. Based on the record in both of those cases, this court concluded silence did not constitute a waiver, regardless of the course of negotiations. We held: "If the parties cannot agree on counsel fees and the losing

12

party wishes to foreclose a suit under section 1988 for attorney's fees, it must insist that a stipulation to that effect be placed in the settlement agreement." We did not require that the specific words "attorney fees" be replicated in haec verba. In this case, there is no evidence whatsoever that the parties did not expressly agree on a settlement to release attorney fees.

This case is altogether different from the foregoing cases cited by the movants. References to attorney fees were not deleted from a prior draft of the settlement agreement in this case. There is no evidence that there was any dispute concerning the amount and the payment of attorney fees. The $45,000 settlement and release was comprehensive and its language plainly included a release of the right to attorney fees and expenses under the Act. The agreement expressly sets forth the waiver of all rights and claims under the Act. No mistake or fraud is claimed in the drafting of the release and stipulation. Allowing a motion for substantial attorney fees in the face of the settlement and release here not only gives Torres a windfall but as a matter of policy leaves written settlements and releases under the Act in chaos, stripped of any finality.

The majority is concerned that the failure to mention the magic words "attorney's fees" in the release requires the court to inquire into the circumstances of settlement negotiations and to determine who said what to whom where observance of a formality will suffice. It also believes that "consideration of extrinsic evidence in these circumstances unnecessarily complicates litigation." Because I fully agree with the policy that forbids consideration of extrinsic evidence of pre-contract negotiations, I believe that the parties should be held to the four corners of the settlement agreement carefully drafted by expert counsel for the plaintiff. No extrinsic evidence as to prior negotiations or any prior conversation is necessary to understand the full import of the unambiguous, comprehensive, written statement before us. A court need only construe and enforce the settlement agreement as written. See Baltimore v. Baltimore R.R., 10 Wall (77 U.S.) 543, 551 (Dec. Term 1870) (holding court "is required to give effect to the contract which the parties chose to make

for themselves"). A court should not, through the application of a bright-line rule, impose contractual terms upon the parties to which they did not agree. See Imperial Fire Ins. Co. v. Coos County, 151 U.S. 452, 462 (1894) ("The courts may not make a contract for the parties. Their function and duty consist simply in enforcing and carrying out the one actually made."); New Orleans v. New Orleans Water Works Co., 142 U.S. 79, 91 (1891) ("Courts have no power to make new contracts or to impose new terms upon parties to contracts without their consent. Their powers are exhausted in fixing the rights of parties to contacts already existing.").

In Wakefield v. Mathews, 852 F.2d 482 (9th Cir. 1988), the Court of Appeals for the Ninth Circuit also had an opportunity to construe Ashley and El Club del Barrio. It sustained a broad release against a claim for attorney fees under section 1988, and noted that in Ashley and El Club del Barrio "the original agreements had included language referring to attorneys' fees, but upon objection the language was deleted." Id. at 484.

The majority attempts to distinguish Wakefield on the ground that the release in Wakefield included "costs or expenses of any nature whatsoever." But that release did not include "attorney fees." The Wakefield court noted that in Ashley this court found that the agreement including "costs" as part of the settlement did not include attorney's fees. Wakefield concluded, however, that it did not disagree with El Club del Barrio and Ashley on the record before it, but that the agreement before it was broader and the record different than in El Club del Barrio and Ashley: "It contains no indication that plaintiffs made any attempt to exempt attorney's fees from the language of the proposed settlement agreement." Id. at 484. Like Wakefield, "the release in this case is not only more sweeping than anything contained in the agreement in those cases, but it must also be interpreted in light of a record which reflects that the parties . . . viewed the waiver as inclusive of attorney's fees." Id. at 485.

II.

When we look at the general design of the settlement agreement and release in this case, as well as at the

14

circumstances under which it was written and the suit that was settled and dismissed with prejudice, and give the language of the settlement agreement a rational meaning consistent with its express general purpose, the payment of $45,000 constituted a final settlement of all claims that the plaintiff had under the Act, including attorney fees and expenses. The motion for attorney fees should be denied. I therefore respectfully dissent.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

15